**The CADLE COMPANY, Daniel C. Cadle a/k/a Dan Cadle, and Citizens Against Corrupt Attorneys, Appellants,**

v.

**David B. LOBINGIER, Appellee.**

**No. 2–98–257–CV.**

Court of Appeals of Texas, Fort Worth.

June 21, 2001.

Alan Wilson, Fort Worth, F. Dean Armstrong, Flossmoor, IL, Rittenhouse and Savant, P.C., William W. Rittenhouse, Austin, for Appellant.

Bourland, Kirkman, Seidler & Evans, L.L.P., David L. Evans, Thomas M. Michel, Fort Worth, for Appellee.

EN BANC and RICHARDS, J. (Sitting by Assignment).

## OPINION ON EN BANC REVIEW

DAY, Justice.

### I. Introduction

After reviewing David B. Lobingier's motion for en banc review, we grant the motion in part and deny it in part. We withdraw our opinion and judgment of October 5, 2000 and substitute the following in their place.

In this appeal, The Cadle Company (Cadle), Daniel C. Cadle a/k/a Dan Cadle (Daniel), and Citizens Against Corrupt Attorneys (CACA) attack three separate judgments: this court's 1996 contempt judgment, the trial court's arrearage judgment, and the trial court's 1998 contempt judgment. We dismiss in part and reverse and render in part.

### II. 1996 Contempt Judgment

In November 1992, Lobingier obtained a judgment against Cadle for $300,000. Cadle unsuccessfully appealed that judgment to this court, the Texas Supreme Court, and the United States Supreme Court. *See Cadle Co. v. Bankston & Lobingier,* 868 S.W.2d 918 (Tex.App.—Fort Worth), *writ denied per curiam,* 893 S.W.2d 949 (Tex.1994), *cert. denied,* 516 U.S. 810, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995). The judgment was never superseded and was not paid until January 11, 1999.

In January and December 1995, Lobingier obtained two turnover orders in the trial court against Cadle and Daniel in an attempt to collect the $300,000 judgment. In July 1996, we held Cadle and Daniel in contempt of court for failing to comply with the 1995 turnover orders.

■ In several of their points, the Cadles[1] collaterally attack our 1996 contempt judgment, asserting it is void. Where, as here, the contemnor is not restrained, mandamus is the proper vehicle for collaterally attacking a contempt judgment. *In re Long,* 984 S.W.2d 623, 625 (Tex.1999) (orig.proceeding). The Cadles have twice attacked our 1996 contempt judgment via petition for writ of mandamus to the Texas Supreme Court on the very grounds they now assert in this appeal. Both times the supreme court has denied the petitions.[2] Accordingly, except to explain the basis for our civil contempt order, we will not revisit those issues a third time.

### III. Civil v. Criminal Contempt

Our 1996 contempt judgment imposed on the Cadles a $500–per–day fine for every day after the date of the judgment that they did not comply with the 1995 turnover orders. The Cadles assert we could not assess the $500–per–day fine because a per diem fine for two isolated acts of contempt—the violation of two

---

1. For simplicity, we sometimes refer to The Cadle Company and Daniel Cadle collectively as "the Cadles."

2. *See In re The Cadle Co.,* No. 99–570 (Tex. 1999) (orig.proceeding) (unpublished order); *In re The Cadle Co.,* No. 98–666 (Tex.1998) (orig.proceeding) (unpublished order).

turnover orders—is impermissible under section 21.001(b) of the government code. This argument is based on the incorrect assumption that the fine is a criminal contempt fine, when it is actually a civil contempt fine. As we discuss below, criminal contempt sanctions are limited by section 21.001(b), but civil contempt sanctions are not.

■ There are two types of contempt: civil and criminal. The classifications of civil and criminal contempt have nothing to do with the characterization of the underlying case or the burdensomeness of the contempt order. *Ex parte Powell*, 883 S.W.2d 775, 778 (Tex.App.—Beaumont 1994, orig. proceeding); *Ex parte Johns*, 807 S.W.2d 768, 771 (Tex.App.—Dallas 1991, orig. proceeding). Rather, the distinction between civil and criminal contempt lies in the nature and purpose of the penalty imposed. *Ex parte Busby*, 921 S.W.2d 389, 391 (Tex.App.—Austin 1996, pet. ref'd); *see also Shillitani v. United States*, 384 U.S. 364, 369–70, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (" 'It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish' civil from criminal contempt.... The test may be stated as: what does the court primarily seek to accomplish by imposing sentence?").

■ In a civil contempt order, the court exerts its contempt power to persuade the contemnor to obey a previous order, usually through a conditional penalty. Because the contemnor can avoid punishment by obeying the court's order, the contemnor is said to "carr[y] the keys of imprisonment in his own pocket." *Busby*, 921 S.W.2d at 391 (citing *Johns*, 807

S.W.2d at 770); *see also Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976) (orig.proceeding). Conversely, a criminal contempt order is punitive in nature and is an exertion of the court's inherent power to punish a contemnor for some completed act that affronted the court's dignity and authority. In criminal contempt proceedings, the court punishes the contemnor for improper past acts, and no subsequent voluntary compliance can enable the contemnor to avoid punishment. *Busby*, 921 S.W.2d at 391.

■ Our 1996 contempt judgment contains a "hybrid" contempt order that assesses sanctions for both civil and criminal contempt. *See Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex.1986) (orig.proceeding) (recognizing that courts can incorporate both forms of contempt into one order). The civil contempt part of the order imposes a prospective, $500–per–day fine from the date of the judgment forward to coerce the Cadles' future compliance with the 1995 turnover orders. The Cadles controlled the amount of this fine and could have avoided paying it altogether or stopped its accrual by complying with the turnover orders. The criminal contempt part of the order, which is governed by section 21.001(b), punishes Daniel with 180 days in jail for refusing to comply with the turnover orders up through the date of our contempt judgment.[3] Daniel could not avoid this punishment once it was imposed, regardless of whether he later complied with the turnover orders.

■ The cases the Cadles rely on to challenge our civil contempt fine are inapposite because they all involve fines for criminal contempt.[4] Section 21.002 allows

3. The writ of commitment was issued but never executed because Daniel is out of state.

4. *See, e.g., Long*, 984 S.W.2d at 625 (holding that fining district clerk $500 per day for past

violations of injunction, which ordered him not to collect certain filing fees, would be impermissible absent proof that at least one lawsuit was filed each day, including week-

a court to punish each act of criminal contempt with a fine of not more than $500 or confinement in the county jail for not more than six months, or both. TEX. GOV'T CODE ANN. § 21.002(b) (Vernon Supp.2001). Because our fine is civil, however, it is not governed by section 21.002. *See Ex parte Shaklee,* 939 S.W.2d 144, 145 n. 2 (Tex. 1997) (orig.proceeding) (noting that section 21.002(b) sets out maximum punishment for *criminal* contempt); *In re Cantu,* 961 S.W.2d 482, 489 (Tex.App.—Corpus Christi 1997, orig. proceeding) (stating that section 21.002(b) merely sets out punishments allowed for criminal contempt and that coercive confinement for civil contempt is not limited by section 21.002(b)); *Ex parte Hawkins,* 885 S.W.2d 586, 588 (Tex.App.—El Paso 1994, orig. proceeding) (holding that punishment for criminal contempt—but not civil contempt—is limited by section 21.002(b)); *see also* TEX. GOV'T CODE ANN. § 21.002(e) (Vernon Supp.2001) (providing that section 21.002 "does not affect a court's power to confine a contemnor to compel him to obey a court order").

■■■■ The Cadles concede that indefinite, coercive confinement to induce compliance with a court order is authorized by section 21.002(e), but assert section 21.002 does not authorize the assessment of a daily coercive fine. While section 21.002 does not expressly authorize a coercive fine, it does not prohibit one. Although we could find no Texas case law directly on point, in the federal system, a coercive fine

"is a standard remedy in civil contempt." *Blankenship & Assocs. v. NLRB,* 54 F.3d 447, 450 (7th Cir.1995). "A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Int'l Union v. Bagwell,* 512 U.S. 821, 829, 114 S.Ct. 2552, 2558, 129 L.Ed.2d 642 (1994); *see also Alberti v. Klevenhagen,* 46 F.3d 1347, 1359 (5th Cir.1995) (upholding district court's imposition of prospective, per-inmate fine imposed to alleviate prison overcrowding).

■■■■ We believe a coercive fine is appropriate here because the unique circumstances of this case would render an order for coercive confinement meaningless. Cadle is an entity and therefore is not subject to coercive confinement. Daniel is an out-of-state resident whose extradition to Texas would likely be a lengthy and costly process.[5] Accordingly, we included the coercive fine in our 1996 contempt judgment.

## IV. Arrearage Judgment

As we discussed, our 1996 contempt judgment fined the Cadles $500 per day from the date of the judgment until they complied with the two 1995 turnover orders issued by the trial court.[6] Nearly two

ends and holidays); *Ex parte Hudson,* 917 S.W.2d 24, 25 (Tex.1996) (orig.proceeding) (contemnor held in contempt and fined for past failure to comply with injunction requiring him to clean up his property); *Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex.1995) (orig.proceeding) (contemnor fined for six prior acts of contempt); *Ex parte Carey,* 704 S.W.2d 13, 14 (Tex.1986) (orig.proceeding) (contemnor fined for past failure to comply with two court orders requiring him to submit to blood test in paternity suit).

**5.** The Cadles' brief states: "Since the date of the judgments of contempt against Dan Cadle, he has not been able to set foot in the State of Texas for fear of incarceration pursuant to the punitive ... 180–day confinement period [ ]" in the 1996 contempt judgment.

**6.** Our July 1996 contempt judgment was rendered after we affirmed the first of the 1995 turnover orders and while the second was on appeal. *See In re Gabbai,* 968 S.W.2d 929, 931 (Tex.1998) (orig.proceeding) (holding that

years later, in May 1998, when the Cadles still had not complied with the turnover orders, the trial court reduced the $500–per–day fine to judgment and rendered an arrearage judgment for Lobingier in the amount of $346,500.

■ Our 1996 contempt judgment did not make the coercive fine payable to Lobingier, and the Cadles assert the trial court erred by rendering judgment that the fine was payable to Lobingier rather than the sovereign. A contempt fine is not payable to a private litigant. *Rosser,* 902 S.W.2d at 962; *Edrington v. Pridham,* 65 Tex. 612, 617 (1886). Thus, the trial court erred by making the amount of the arrearage judgment payable to Lobingier.

■ Lobingier contends the contempt fine should be payable to him because a civil contempt fine is for the benefit of the litigant. *See Ex parte Dolenz,* 893 S.W.2d 677, 680 (Tex.App.—Dallas 1995, orig. proceeding) (noting that court's civil or coercive power is remedial in nature for the benefit of the complainant). The fact that a civil contempt fine is for a litigant's benefit does not mean the fine should be paid to the litigant. Rather, the litigant benefits when the contemnor complies with the court's order to avoid paying the fine altogether or to stop its accrual. Indeed, the *Dolenz* court referred to a court's power of coercive *confinement* as being for the complainant's benefit. *Id.* Coercive confinement does not benefit the complainant

financially apart from inducing the contemnor's compliance with a court order.[7]

■ Lobingier contends that we should not address the propriety of the arrearage judgment because whether he is entitled to recover the contempt fine pertains to his capacity to sue and was not properly raised via verified pleading in the trial court. *See Nootsie, Ltd. v. Williamson County App. Dist.,* 925 S.W.2d 659, 662 (Tex.1996) (holding that complaint about lack of capacity must be raised by verified pleading or is waived on appeal). A party has capacity to sue when he has legal authority to act, regardless of whether he has a justiciable interest in the controversy. *Id.* at 661. Generally, the lack of capacity to sue pertains to the legal right to prosecute a lawsuit in one's own name. *Cleaver v. George Staton Co.,* 908 S.W.2d 468, 469 (Tex.App.—Tyler 1995, writ denied). The circumstances affecting capacity to sue include, but are not limited to, infancy, assumed names, alienage, insanity, executor status, and status as a corporate plaintiff. *Hotze v. Brown,* 9 S.W.3d 404, 413 (Tex.App.—Houston [14th Dist.] 1999, pet. granted) (op. on reh'g).

■ In contrast, standing pertains to a person's justiciable interest in the suit. *Roman Forest Pub. Util. Dist. v. McCorkle,* 999 S.W.2d 931, 932 (Tex.App.—Beaumont 1999, pet. denied); *AU Pharm., Inc. v. Boston,* 986 S.W.2d 331, 340 (Tex.App.—Texarkana 1999, no pet.). A person has

appellate court has exclusive jurisdiction to enforce orders being appealed, regardless of whether contempt occurred before or after appellate court acquired jurisdiction).

7. In the federal system, a civil contempt fine is designed either to coerce the defendant into complying with the court's order or to compensate the complainant for losses sustained. *See Int'l Union,* 512 U.S. at 829, 114 S.Ct. at 2558; *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91

L.Ed. 884 (1947). The purpose of our July 1996 contempt judgment was not to compensate Lobingier financially with the fine, but to induce Cadle to comply with the trial court's turnover orders so the $300,000 judgment would be satisfied. The record shows that Cadle has complied with the turnover orders and paid the $300,000 judgment with interest. Under the circumstances of this case, we decline to hold that a compensatory civil contempt fine would be proper.

standing to sue when he is personally aggrieved by the alleged wrong. *Nootsie,* 925 S.W.2d at 661. Without a breach of a legal right belonging to a plaintiff, however, he has no standing to litigate. *Pankhurst v. Weitinger & Tucker,* 850 S.W.2d 726, 729 (Tex.App.—Corpus Christi 1993, writ denied). Because standing is a component of subject matter jurisdiction, lack of standing may be raised at any time. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993).

■ In this case, the Cadles asserted in the trial court that Lobingier had no legal right to the contempt sanctions assessed in our 1996 contempt judgment and reduced to judgment in the arrearage judgment. On appeal, the Cadles argue that Lobingier has no standing to enforce our 1996 contempt judgment because the judgment did not award the contempt fine to him. These are lack of standing arguments. Lobingier was personally aggrieved by the Cadles' failure to comply with the turnover orders that gave rise to this court's issuance of the 1996 contempt judgment. But Lobingier was not, and could not be, personally aggrieved by the Cadles' failure to pay the contempt fine because he was not entitled to it. Indeed, the trial court rendered the arrearage judgment on May 27, 1998, but the Cadles did not comply with the turnover orders until January 11, 1999. Lobingier does not assert that he is entitled to recover the portion of the contempt fine that accrued between May 1998 and January 1999. Because Lobingier was not entitled to the contempt fine, he had no justiciable interest in a suit to determine the amount of coercive contempt sanctions the Cadles owed due to their failure to comply with our 1996 contempt judgment.

Lobingier contends that he had standing to seek enforcement of our 1996 contempt judgment because contempt proceedings are initiated by private aggrieved parties. He contends that only he, not the State of Texas, could have sought to enforce the 1996 contempt judgment.

■ Lobingier cites no authority to support these arguments except a case stating the general proposition that a litigant has the right to institute a contempt proceeding. *See Kruegel v. Williams,* 153 S.W. 903, 904 (Tex.Civ.App.—Dallas 1913, writ ref'd) (holding that party interested in judgment may institute contempt proceeding to ensure its enforcement). This case is not on point because the arrearage judgment did not result from a contempt proceeding; it resulted from an enforcement proceeding. In addition, Lobingier was not the only person who could have sought enforcement of our 1996 contempt judgment. This court has authority to enforce its own contempt judgments. *See Gabbai,* 968 S.W.2d at 931 (stating that courts possess inherent power to enforce their own orders through contempt proceedings, but generally lack authority to enforce another court's orders by contempt).

We hold Lobingier cannot recover the contempt fine from the Cadles. However, as we discuss in section VI, below, the Cadles are liable for civil contempt sanctions payable to this court.

## V. 1998 Contempt Judgment

Despite its unsuccessful appeal of the $300,000 judgment, Cadle insisted Lobingier had wrongfully obtained the judgment. In April 1995, Daniel formed CACA and, in June 1995, Cadle and CACA sued Lobingier in Trumbull County, Ohio, alleging Lobingier had violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and tortiously interfered with Cadle's business activities. Cadle assigned its claims against Lobingier to CACA for $1000 and ten percent of any recovery in the Ohio lawsuit.

In August 1995, Lobingier sought and obtained an injunction against Cadle and CACA. The August 1995 injunction enjoined Cadle and CACA from:

- "prosecuting or proceeding in any fashion" with the Ohio lawsuit, except to respond to orders from the Ohio court and to file documents necessary to dismiss the Ohio lawsuit;
- filing in any other jurisdiction a lawsuit similar to the Ohio lawsuit, except in the original court and cause number in which the $300,000 judgment had been rendered;
- seeking to prevent or stay the collection of the $300,000 judgment, except in the original court and cause number.

In October 1998, the trial court held Cadle, Daniel, and CACA in contempt of court for violating the temporary injunction. The Cadles and CACA appealed the 1998 contempt judgment in September 1998. In April and May 1999, the Cadles and CACA, petitioned this court for mandamus relief from the 1998 contempt judgment. We denied the Cadles' petition on May 6, 1999 and CACA's petition on May 11, 1999.[8] The Cadles and CACA then petitioned the Texas Supreme Court for mandamus relief from the 1998 contempt judgment. The supreme court denied relief on September 9, 1999 and December 2, 1999.[9]

■ A contempt judgment is reviewable only via a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved). See Long,

984 S.W.2d at 625. Decisions in contempt proceedings cannot be reviewed on appeal because contempt orders are not appealable, even when appealed along with a judgment that is appealable. Metzger v. Sebek, 892 S.W.2d 20, 55 (Tex.App.—Houston [1st Dist.] 1994, writ denied), cert. denied, 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995); see also Tex. Animal Health Comm'n v. Nunley, 647 S.W.2d 951, 952 (Tex.1983).

■ We denied the Cadles' and CACA's petitions for mandamus relief from the 1998 contempt judgment in 1999, and our plenary power over those original proceedings has long since expired. See Tex.R.App. P. 19.1. Thus, we are without jurisdiction to review either the Cadles' or CACA's complaints about the 1998 contempt judgment in this appeal.

■ The Cadles assert that we no longer have plenary power to change our October 5, 2000 judgment. Rule 19 provides that a court of appeals' plenary power over its judgment expires 30 days after the court overrules all timely filed motions for rehearing. Id. 19.1(b). We denied Lobingier's motion for rehearing on January 25, 2001, and he did not file his motion for en banc review until 29 days later, on February 23, 2001. The Cadles assert that our plenary jurisdiction expired on February 25, 2001. The San Antonio Court of Appeals has considered and rejected this argument. In Yzaguirre v. Gonzalez, 989 S.W.2d 111 (Tex.App.—San Antonio 1999, pet. denied), the court held that a motion for en banc reconsideration is a type of motion for rehearing for purposes of rule 19.1(b) that can be filed at

---

8. See In re The Cadle Co., No. 2–99–137–CV (Tex.App.—Fort Worth 1999, orig. proceeding) (not designated for publication); In re Citizens Against Corrupt Attorneys, No. 2–99–159–CV (Tex.App.—Fort Worth 1999, orig. proceeding) (not designated for publication).

9. See In re The Cadle Co., No. 99–0571 (Tex. 1999) (orig.proceeding) (unpublished order); In re Citizens Against Corrupt Attorneys, No. 99–0962 (Tex.1999) (orig.proceeding) (unpublished order).

any time during the appellate court's plenary period. *Id.* at 113; *see also* Tex. R.App. P. 49.7. As a result, the court concluded that a motion for en banc reconsideration filed within 30 days after the denial of a motion for rehearing was timely and that the court's plenary jurisdiction did not expire until 30 days after it ruled on a timely filed motion for en banc reconsideration. *Yzaguirre,* 989 S.W.2d at 113. We agree with the San Antonio Court of Appeals. Because Lobingier's motion for en banc review was filed within 30 days after we denied his motion for rehearing, our plenary jurisdiction extends until 30 days after we rule on the en banc motion. Accordingly, we have jurisdiction to consider the motion.

■ The Cadles also contend that the 1998 contempt judgment is void and therefore subject to collateral attack via this direct appeal. A direct appeal is not a collateral attack, however. "A collateral attack on a judgment is an effort to avoid its binding force in a proceeding, instituted not for the purpose of correcting, modifying, or vacating it, but in order to obtain specific relief against which the judgment stands as a bar." *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 549 (Tex.App.—Houston [1st Dist.] 1994, no writ) (quoting *Texaco, Inc. v. LeFevre,* 610 S.W.2d 173, 176 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ)); *see also Simmons v. Compania Financiera Libano, S.A.,* 14 S.W.3d 338, 340 (Tex.App.—Houston [14th Dist.] 2000, pet. filed) ("A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought in a court of equal jurisdiction for some other purpose."). The Cadles and CACA's direct appeal of the 1998 contempt judgment was brought to correct, modify, or vacate the judgment, not to serve as a bar against it in an

enforcement proceeding. Thus, the appeal was a direct attack on the contempt judgment, not a collateral attack. *See Glunz v. Hernandez,* 908 S.W.2d 253, 255 n. 3 (Tex. App.—San Antonio 1995, writ denied) (noting that direct attacks in the court of appeals include ordinary appeal, appeal by writ of error, and appeal by writ of error from bill of review judgment); *see also Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973) (holding that direct attack may be brought in court rendering the judgment or in another court authorized to review judgment on appeal or by writ of error). Because the appeal from the 1998 contempt judgment is a direct attack on the judgment, and because we lack jurisdiction to review a contempt judgment via direct appeal, we are without authority to consider the Cadles' and CACA's complaints regarding the judgment.[10]

■ The Cadles cite three cases that state a void judgment is subject to both direct and collateral attacks. *See Tex. Dep't of Transp. v. T. Brown Constructors, Inc.,* 947 S.W.2d 655, 659 (Tex.App.—Austin 1997, writ denied); *Lawrence Sys., Inc. v. Superior Feeders, Inc.,* 880 S.W.2d 203, 211 (Tex.App.—Amarillo 1994, writ denied); *Boyd v. Gillman Film Corp.,* 447 S.W.2d 759, 762–63 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.). In each of these cases, the courts simply acknowledged that a direct appeal was not the only way to attack a void judgment. *See Tex. Dep't of Transp.,* 947 S.W.2d at 659 (holding that appellant, who failed to file timely appeal from trial court's judgment and could not meet requirements of bill of review, could still collaterally attack void judgment); *Lawrence Sys.,* 880 S.W.2d at 211 (noting collateral attack rule as dicta to holding

---

10. We express no opinion about whether the Cadles and CACA can collaterally attack the 1998 contempt judgment if Lobingier seeks to enforce it.

that enforcement of foreign judgment was barred by statute of limitations); *Boyd*, 447 S.W.2d at 762–63 (rejecting idea that void judgment could not be attacked by petition for writ of mandamus where it had not been attacked via direct appeal). It is important to note, however, that a direct appeal was at least initially available in each case. None of the cases involved the argument the Cadles make here, which is that, if a direct appeal is the improper method for attacking a trial court's ruling, the appeal can be treated as a collateral attack. We decline to apply the collateral attack rule to this situation.

## VI. Request for "Release" from Contempt Fines

■ The Cadles assert they are entitled to be "released" from both the 1996 and 1998 contempt judgments because they have complied with the $300,000 judgment, the turnover orders, and all related matters. Because we lack jurisdiction over the appeal from the 1998 contempt judgment, we cannot consider this complaint as to that judgment. In addition, the confinement order against Daniel in the 1996 contempt judgment is a criminal contempt sanction. Daniel cannot avoid this punitive sanction by his post-contempt satisfaction of the $300,000 judgment and other orders. *See Busby*, 921 S.W.2d at 391.

■ Further, the Cadles did not comply with the coercive portion of our contempt judgment until January 11, 1999, when funds that Cadle had deposited in the registry of the federal district court were paid to Lobingier pursuant to a fed-

eral district court order.[11] Thus, 922 days elapsed during which the Cadles failed to comply with our July 1996 judgment (July 3, 1996—January 11, 1999). Consequently, the Cadles are liable for $461,000 in civil contempt sanctions, payable to this court. The Cadles could have avoided these civil sanctions by complying with the turnover orders before the sanctions accrued but chose not to. Now that the sanctions have accrued, the Cadles must pay them. *See id.* (stating the contemnor can only avoid coercive sanctions by timely complying with contempt order).

## VII. Attorney's Fees

Cadle asserts the trial court erred by awarding Lobingier $5,000 in attorney's fees related to the 1998 turnover order Lobingier obtained concerning the funds Cadle had deposited in the federal court registry. Lobingier concedes that the fee award is improper. Accordingly, we sustain this issue.

## VIII. Conclusion

We dismiss the Cadles' appeal of our 1996 contempt judgment and the trial court's 1998 contempt judgment. We reverse the trial court's arrearage judgment and render judgment that Lobingier cannot recover civil contempt sanctions from the Cadles. However, we render judgment that the Cadles are jointly and severally liable for the $461,000 civil contempt fine, payable to this court, due to their failure to comply with the civil contempt order in our 1996 contempt judgment for 922 days. It is ordered that $461,000 must

---

11. Immediately after the trial court signed the arrearage judgment, Cadle sought relief in the federal district court and paid over $400,000 into the federal court's registry. The federal district judge found that Cadle's federal lawsuit "was obviously contrived by [Cadle] to delay payment of sums due and owing to [Lobingier]" and dismissed it. In August 1998, the trial court ordered Cadle and Daniel to turn the funds in the federal court registry over to Lobingier, and, in December 1998, the federal court ordered those funds to be paid to Lobingier.

be paid into the registry of this court no later than 5:00 p.m. on July 12, 2001.

We reverse the $5,000 award of attorney's fees to Lobingier and render judgment that Lobingier take nothing on his attorney's fees claim.

Cadle, Daniel, and CACA are jointly and severally liable for the costs incurred in this appeal, for which let execution issue.

HOLMAN and WALKER, JJ., Recused.