# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

============================

## ON MOTION FOR REHEARING

============================

## NO. 03-04-00246-CV

**Scarlett Rebecca Kogel, Appellant**

**v.**

**Thomas Wyatt Robertson, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. 99-11464, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

We grant appellant's motion for rehearing, withdraw our opinion and judgment issued August 19, 2005, and substitute the following in its place.

This appeal arises from a suit to modify a custody order and a child support enforcement action. During the original suit affecting the parent-child relationship, the district court appointed the child's father, appellee Thomas Wyatt Robertson, as sole managing conservator and the child's mother, appellant Scarlett Rebecca Kogel, as the possessory conservator. Kogel brought suit to modify the custody order. Robertson counter-petitioned for his own desired modifications and sued to enforce Kogel's child support obligations. The district court ruled against Kogel on the

modification and child support enforcement issues and held Kogel in contempt for failing to obey an earlier court order. This appeal followed. For the reasons discussed below, we modify the child support enforcement order and, as modified, affirm the district court's orders.

**BACKGROUND**

In 2001, a custody dispute arose between Kogel and Robertson, who were not husband and wife, over their one-year-old daughter, C.R. Kogel accused Robertson of sexually abusing C.R., and the district court appointed experts to investigate the allegation. The court also ordered Kogel to bring the child to court by November 30, 2001, and to cooperate with the experts assigned to the case. Prior to the court date in November 2001, Kogel disobeyed the court's order and fled to Belgium with C.R., who is a citizen of the United States.

The original suit affecting the parent-child relationship ("SAPCR") was heard in a bench trial in early February 2002. The court issued a final judgment on February 6, 2002, finding that the charges of sexual abuse against Robertson were false and lacked a factual basis; that Kogel failed to deliver C.R. as ordered by the court; and that Kogel unlawfully interfered with the custody order by retaining C.R. outside of the United States with the intent to obstruct the exercise of Robertson's parental rights. The court further found that C.R. had been present in Austin, Texas, for an amount of time sufficient for acclimatization and that Austin had been C.R.'s "habitual residence" since the suit was filed. Also, the court determined that Kogel's retention of C.R. put the child in grave danger of psychological harm and placed the child in an "intolerable" situation, and that these harms would be alleviated if the child were returned to Robertson in Texas.

2

The February 6 judgment ordered Kogel to return C.R. to Texas, appointed Robertson as the sole managing conservator and Kogel as possessory conservator of C.R., and required C.R. and Kogel to attend psychological and psychiatric treatment. The treatment costs were taxed to Kogel. The court determined that the standard possessory order was not in the best interest of the child and that, instead, Kogel would be permitted at least two supervised visits per month with C.R. Kogel was permanently enjoined from interfering with Robertson's parental rights and she was ordered to post a $10,000 bond payable to Robertson in the event that Kogel violated the possession and access orders. Additionally, Kogel was ordered to pay $156 per month to Robertson for child support; a $500 statutory penalty for filing a false child abuse report; $52,279.42 for Robertson's attorney's fees; and $6,150 for the attorney ad litem's fees. Kogel's motion for a new trial was overruled. The judgment became final and was not appealed.

A Belgian trial court began proceedings to enforce the Texas judgment on August 23, 2002. The Belgian court found the custody aspects of the order enforceable, but declined to enforce its monetary provisions. An appeal was taken to the Belgian Court of Appeals, which found in favor of Robertson on May 13, 2003, and ordered C.R. returned to the United States under the Hague Convention.[1] After Kogel refused to return C.R. to the United States in compliance with the

---

[1] *See* Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 3 (codified at 42 U.S.C.A. §§ 11601-11610 (West 1995)). The Hague Convention is an international treaty of which both Belgium and the United States are signatories. It was established to provide a remedy for international child abductions and grants concurrent jurisdiction to state and federal courts to determine the merits of an abduction claim, but not the merits of the underlying custody battle. It deters parental abductions by depriving the abductor's actions of any practical or judicial consequences, thereby eliminating the primary motivation for the abduction—to obtain an advantage in custody proceedings by commencing them in another country. *See id.*

judgment, the Belgium Ministry of Justice ordered Belgian authorities to physically remove C.R. from Kogel and return her to Robertson in Texas. The Belgian authorities carried out this order on June 12, 2003.

On August 8, 2003, Kogel filed a petition in Travis County to modify the February 6 judgment on the grounds that circumstances had materially and substantially changed since the order was entered. Kogel sought to be appointed as joint managing conservator with the right to establish C.R.'s primary residence. Robertson filed his own counter-petition seeking to collect damages from Kogel and her mother for conspiring to violate 18 U.S.C. § 1204(a), which establishes a tort cause of action against persons who remove a child from the United States with the intent to obstruct another's parental rights. *See* 18 U.S.C § 1204(a) (Supp. 2005). Robertson also urged that the February 6 order be modified to remove Kogel's possessory rights and permit her no contact with C.R. until the child was stabilized and visitation was recommended by the therapists and the attorney ad litem; he sought a temporary restraining order to effectuate these purposes and sought to hold Kogel in contempt for violating the prior orders. Robertson also moved to enforce the child support order and to hold Kogel in contempt for her failure to pay as ordered.

In November 2003, the district court conducted a bench trial for the custody modification and child support enforcement actions. A portion of the hearing focused on Kogel's decision to leave the country with C.R. in defiance of the previous court orders, and the court expressed concern for Kogel's ability to follow future court orders. The district court directly questioned Kogel as a witness on several occasions, including soliciting Kogel's opinion about what circumstances had changed to warrant modifying the custody and child support orders. Some of the

court's questions were based on a letter that was written by Kogel and posted on a website concerning the ongoing battle between her and Robertson over the custody of C.R. The first mention of this website occurred during preliminary questioning of Kogel at a July 2003 hearing.

The district court issued its modification and child support enforcement orders on August 25, 2003. Pursuant to family code sections 153.501 to 153.503, which incorporate the Hague Convention Act, the court found evidence of a grave risk of international child abduction based on Kogel's previous flight and, therefore, implemented appropriate safeguards to protect the child from a future international abduction. *See* Tex. Fam. Code Ann. §§ 153.501-.03 (West Supp. 2005). Although the court determined that it was in the child's best interest to maintain the February 6 appointments of Robertson as sole managing conservator and Kogel as possessory conservator, the court modified the previous order regarding Kogel's rights of access. Under the modified order, Kogel and C.R. were no longer mandated to attend psychological counseling, Kogel was to have supervised visits with C.R. once a week at Kids Exchange in Austin, and any contact by Kogel was "subject to adequate physical security to prevent the abduction of the child." Additionally, a permanent injunction was entered against Kogel to prevent her from interfering with Robertson's parental rights or from committing another international abduction of C.R.

The court divided responsibility evenly between Kogel and Robertson to pay for the visitation security and for the past-due psychiatric fees, but it required Kogel to post a $100,000 bond payable to Robertson in the event she failed to comply with the order. Kogel was also held in contempt for her previous violation of the order—failing to surrender C.R. in February 2002. She was sentenced to 180 days in jail, but the sentence was suspended on the condition that Kogel

5

comply with all of the terms of the current order for two years. Finally, under the modified order, Kogel was required to pay $3,326.63 for child support arrearages, $107,321.43 and $10,240 for Robertson's attorney's fees, and a portion of $16,382.06 for the attorney ad litem's fees. The order characterized Robertson's attorney's fees as being for "legal services rendered in relation to the child and in the nature of child support" and warned the parties that a violation of the order could result in a finding of contempt, punishable by confinement in jail or a fine. This appeal followed.

## DISCUSSION

Kogel appeals the district court's final order in five issues: (1) whether Kogel is entitled to a new trial because she was denied a fair and impartial trial; (2) whether there is sufficient evidence to establish that circumstances have materially and substantially changed and warrant a modification in the custody order; (3) whether the evidence was legally and factually insufficient to support the award of attorney's fees; (4) whether the district court erred in characterizing the award of attorney's fees as child support; and (5) whether the district court erred in conditioning the suspension of Kogel's contempt sentence on Kogel's compliance with the terms of the order.

**Fair and Impartial Trial**

Kogel complains that she did not receive a "fair and impartial trial" because the district court judge improperly questioned her from the bench, conducted his own investigation of the evidence, made himself a witness in violation of the Texas Rules of Evidence, and was not a fair and impartial magistrate. Kogel asserts that these errors reflect judicial impropriety, probable prejudice, and amount to the court unlawfully "punishing" Kogel for disobeying the Texas courts.

6

We turn first to the court's questioning of Kogel and its "investigation" of Kogel's internet statements. The transcript reflects that Kogel was initially questioned by Robertson's attorney in July 2003 about some information appearing on the internet concerning the relevant facts of this case. Kogel testified that she wrote a letter about the events, which her niece then posted to a website displaying C.R.'s picture. The website conveys Kogel's version of the circumstances surrounding the custody dispute, including Robertson's alleged sexual abuse of C.R. and Kogel's views of the Texas justice system. Robertson's attorney again raised the website issue during his examination of Kogel on November 24, 2003. Later during Kogel's testimony, the court inquired of Kogel whether she accepted any responsibility for the "chain of events" leading up to the Belgian authorities removing C.R. and returning her to Texas. When Kogel attempted to blame the situation on others, including the court-appointed psychologist and the Robertson family, the court pressed Kogel as to whether she "knew that it was illegal to leave [the United States] with the child." Kogel responded, "Yes," and then the following exchange occurred between the court and Kogel:

> Q. You say as much on your website. And I'm wondering if I can just have this—I printed this off your website. It says "this is the English translation of the events written by Scarlett Kogel before the 13th of May 2003." Did you write those?
>
> A. I wrote the history.
>
> Q. Okay. This is the history?
>
> A. Yes.
>
> Q. Do you mind if I introduce this as a Court's exhibit?
>
> A. [By the attorney ad litem]: I would offer it, Your Honor, as an exhibit.

7

Q. [Court]: We'll just mark that Court's Exhibit No. 1, and it's introduced, unless you want to examine it to make sure that I have copied it correctly.

Nothing was said in response to the court's invitation to examine the documents, the printouts were admitted, and the attorney ad litem continued with her examination of Kogel. The court did not introduce any other exhibits.

Kogel now complains that the court acted improperly by retrieving the website pages on its own and using them in court without prior notice. However, not once during the hearing did Kogel, who was represented by counsel, object to the court's questions, its possession of the website pages, or its introduction, use, and admission of the documents. In fact, the court asked the parties for permission to introduce the documents and then invited the parties to examine them prior to their admission. Kogel made no objection and, in fact, said nothing at either juncture. Because Kogel did not timely object to the district court's direct questioning or its "investigative" actions, she failed to preserve these issues for review. *See* Tex. R. App. P. 33.1 (objections must be timely made); Tex. R. Evid. 103 (evidentiary objections must be timely made). Kogel cannot resurrect the unpreserved error by raising this complaint in her motion for new trial. *See G.T.E. Mobilnet of S. Tex. P'ship v. Pascouet*, 61 S.W.3d 599, 613 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).[2]

---

[2] We note that even if Kogel had properly preserved for review the issue of the court's questioning, she would not prevail. The district court judge acted appropriately when he questioned Kogel as a witness. *See Cason v. Taylor*, 51 S.W.3d 397, 413 (Tex. App.—Waco 2001, no pet.) (it is ordinarily proper for judge to ask witness competent and material questions to elicit evidence not otherwise presented or to clarify testimony); *Hudson v. Hudson*, 308 S.W.2d 140, 142 (Tex. Civ. App.—Austin 1957, no writ) (trial judge's lengthy and vigorous examination of witness was proper; judge's active role is more appropriate in bench trial than jury trial); *Conley v. St. Jacques*, 110 S.W.2d 1238, 1241 (Tex. Civ. App.—Amarillo 1937, writ dism'd) (family code and Texas jurisprudence impose upon trial judge duty to inquire into all matters that would throw light upon

8

In addition to her general assertion that the court's use of the website information denied her a fair trial, Kogel also asserts that it constituted error in violation of Texas Rule of Evidence 605, which provides that "[t]he judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Tex. R. Evid. 605. The purpose of rule 605 is to preserve the judge's impartiality. *In re O'Quinn*, 77 S.W.3d 438, 448 (Tex. App.—Corpus Christi 2002, no pet.). Thus, the judge may not "step down from the bench and become a witness in the very same proceeding over which he is currently presiding." *Hensarling v. State*, 829 S.W.2d 168, 171 (Tex. Crim. App. 1992).

We hold that the district court did not violate rule 605 because the judge did not testify as a witness at the trial. We further note that the improper admission of or comment on evidence constitutes an ordinary trial error that must be preserved to be reviewed on appeal. *See In re M.S.*, 73 S.W.3d 537, 539-40 (Tex. App.—Beaumont 2002), *aff'd in relevant part*, 115 S.W.3d 534 (Tex. 2003). Kogel made no such objection at trial.

Kogel also urges that the judge was not a "neutral and detached magistrate" because he (1) asked her "aggressive"and "intense" questions and (2) was improperly influenced by the prominence in the Austin legal community of Robertson, a local lawyer, and his father, a law professor at the University of Texas.

Parties have a right to a fair trial under the United States and Texas constitutions. *Metzger v. Sebek*, 892 S.W.2d 20, 37 (Tex. App.—Houston [1st Dist.] 1994, writ denied). One of

---

fitness of person who seeks custody and environment into which child would be relegated by court's order).

9

the most fundamental components of a fair trial is "a neutral and detached judge." *Id.* We review the entire record for evidence of improper conduct. *Id.* at 39. To reverse a judgment on the ground of improper conduct of or comments by the judge, we must find (1) judicial impropriety in fact occurred and (2) the complaining party suffered probable prejudice. *Id*.

We have reviewed the record in its entirety for evidence of the judge's partiality or other improper conduct, paying close attention to the excerpt emphasized by Kogel in which the court questioned her about her personal responsibility for the events and about the information on her website. We find no evidence in the record that the judge exhibited partiality or bias against Kogel. First, we have already determined that a court, especially in a family law case, is entitled to ask a witness questions directly from the bench. *Cason v. Taylor*, 51 S.W.3d 397, 413 (Tex. App.—Waco 2001, no pet.); *Hudson v. Hudson*, 308 S.W.2d 140, 142 (Tex. Civ. App.—Austin 1957, no writ); *see also Conley v. St. Jacques*, 110 S.W.2d 1238, 1241 (Tex. Civ. App.—Amarillo 1937, writ dism'd). Furthermore, from our review of the record, the court's questions were reasonable and fact-based; the court intervened with questions primarily for the purpose of clarifying Kogel's testimony and did not improperly become an advocate during its direct questioning. Second, we do not find evidence in the record that suggests the Robertsons' involvement in the Austin legal community influenced the court's conduct at trial. In fact, Kogel was specifically asked "Do you believe, as you sit here today, under oath to tell the truth, the whole truth, that the Robertsons still have influence on this particular court?" and she responded "No." Hence, there is an absence in the record of evidence demonstrating that judicial impropriety occurred or that Kogel suffered probable harm as a result. We overrule Kogel's first issue.

10

**Modification of Parent-Child Relationship**

In her second issue, Kogel asserts that the district court erred when it modified the custody order denying the relief requested by Kogel and granting the modifications sought by Robertson. Kogel argues that the circumstances surrounding the parties have materially and substantially changed since the original order issued on February 6, 2002. Kogel also challenges the modified order as an abuse of discretion and argues that the evidence supporting the modification is legally and factually insufficient.

The family code provides that the court may modify the order (1) if doing so would be in the child's best interest and (2) if the child's or parties' circumstances have "materially and substantially changed" since the order was entered. Tex. Fam. Code Ann. § 156.101(1) (West Supp. 2005). There is no bright-line rule to determine what is in the best interest of the child; each case must be determined on its unique set of facts. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). The district court has wide latitude in determining the best interests of a child and will be reversed only for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but only factors used to assess whether the court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.).

Evidence is legally insufficient to support a finding if the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *St.*

11

*Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex. 2002). We consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Id*. A district court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In reviewing factual sufficiency, we must weigh all of the evidence in the record. *Id.* Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* Inferences may support a judgment so long as they are reasonable in light of all of the evidence. *Id.*

Kogel asked the district court to modify the original custody order by: appointing Kogel as joint managing conservator with the primary right to choose the residence of the child; awarding her an equitable portion of the costs of changing C.R.'s residence; retroactively decreasing her child support obligation; and awarding her attorney's fees. The district court found that it was not in the child's best interest to modify the conservatorship assignments, but that it was in the child's best interest to modify some of the access provisions. The court modified the custody order to permit Kogel more frequent, yet supervised, access to C.R. and to cancel Kogel's required psychological treatments. The court further ordered each parent to pay half of the visitation security and psychiatrist fees, and ordered Kogel to post a $100,000 bond as an assurance that she would not abduct C.R. again.

Although we agree with Kogel that circumstances had materially and substantially changed since the February 6 order was rendered, the modifications the district court made to the order acknowledge this. The district court could not have modified the order absent an implicit

12

finding of changed circumstances. *See* Tex. Fam. Code Ann. § 156.101. However, even assuming a material and substantial change of circumstances, the district court was not obligated to adopt the modifications urged by Kogel.

The family code provides the court broad discretion in its modification decisions. *Id*.; *Gillespie* 644 S.W.2d at 451. Moreover, section 153.501 of the family code authorizes a district court to take the measures outlined in section 153.503 to prevent a parent's international abduction of a child if credible evidence is presented to indicate that this is a potential risk. Tex. Fam. Code Ann. §§ 153.501, .503. The abduction risk factors include evidence that a parent has taken or concealed a child, lacks a financial reason to stay in the United States, or has a history of violating court orders. *Id*. § 153.502. If the district court finds that it is necessary to protect the child from international abduction, it may take the following measures including: appointing another person, such as the other parent, as sole managing conservator; requiring supervised visitation; prohibiting the parent from removing the child from the U.S.; and ordering the parent to execute a bond in an amount sufficient to offset the cost of recovering the child if the child is abducted. *Id.* § 153.503.

Kogel took C.R. to Belgium in direct violation of a court order and refused to return her. Kogel acknowledges that she does not have any ties to the United States and lacks financial reasons to stay in the United States. Thus, Kogel's situation and previous actions comport with many of the enumerated statutory risk factors. *See id.* § 153.502. The district court found that, due to the grave risk of international child abduction posed by Kogel, it would be in C.R.'s best interest to effect measures calculated to prevent another abduction. The district court modified the order to

13

provide more security for Kogel's visits with C.R. to prevent another abduction, as authorized under the family code. *See id*. §§ 153.501-.03.

Robertson claims to have spent hundreds of thousands of dollars in attorney's fees to recover C.R. from Belgium, which is significantly more than the value of the bond demanded of Kogel. Thus, the bond's increase from $10,000 in the original order to $100,000 in the modified order is justified by the resources Robertson spent to recover C.R. after her abduction and by Kogel's admitted access to resources. *See id.* § 153.503.

Considering the evidence in the light most favorable to Robertson, we hold that the evidence supporting the district court's modifications is legally sufficient. *See St. Joseph Hosp.*, 94 S.W.3d at 519. The findings of fact are not against the great weight and preponderance of the evidence and thus are factually sufficient. The findings of fact and the modification based thereon should not be overturned. *See Ortiz*, 917 S.W.2d at 772.

Kogel has not shown that the district court acted in an unreasonable and arbitrary manner or without reference to guiding principles when it found that it was in C.R.'s best interest for Robertson to remain sole managing conservator and that the other modifications were warranted. Furthermore, because Kogel failed to establish that the evidence was legally and factually insufficient, these factors do not weigh in her favor under an abuse of discretion standard. *See Doyle*, 955 S.W.2d at 479. We hold that the district court did not abuse its discretion in denying Kogel's requested modifications and granting Robertson's and the court's modifications. We overrule Kogel's second issue.

14

**Attorney's Fees**

In her third issue, Kogel challenges the award of attorney's fees as an abuse of discretion and asserts that the award is not supported by legally and factually sufficient evidence.

The court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney. Tex. Fam. Code Ann. § 106.002 (West Supp. 2005). The judgment may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt. *Id.* An award of attorney's fees in a suit affecting the parent-child relationship is within the discretion of the district court. *See id*. § 106.001 (West 2002); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but only factors used to assess whether the court abused its discretion. *Doyle*, 955 S.W.2d at 479.

The reasonableness of the attorney's fees awarded is a question of fact and must be supported by the evidence. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the supreme court laid out factors that a district court should consider when determining the reasonableness of attorney's fees. *See also Petco Animal Supplies, Inc.*, 144 S.W.3d at 567. The factors include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Arthur Andersen & Co.*, 945 S.W.2d at 818; *Petco Animal Supplies, Inc.*, 144 S.W.3d at 567. Not all of the factors must be considered in every case; rather

these factors are general guidelines that should be taken into account when determining the reasonableness of attorney's fees. *Petco Animal Supplies, Inc.*, 144 S.W.3d at 567.

Clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law. *Id.* In the absence of controverting evidence, an affidavit of counsel regarding the *Andersen* factors will support a district court's award of attorney's fees. *Moody Nat'l Bank v. Riebschlager*, 946 S.W.2d 521, 525 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The affidavit of an attorney representing a claimant constitutes expert testimony that will support an award of attorney's fees. *See Knighton v. International Bus. Machs. Corp.*, 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Owen Elec. Supply, Inc. v. Brite Day Constr. Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Evidence supporting an award of attorney's fees should include the hourly rate and hours expended. *Central Tex. Micrographics v. Leal*, 908 S.W.2d 292, 299 (Tex. App.—San Antonio 1995, no writ).

Mr. Barrett, one of Robertson's attorneys, averred in his fees affidavit that he has been licensed to practice law since 1974 and has been board certified in family law since 1986. Barrett, who charges $350 per hour for his services, stated his familiarity with the billing rates for attorneys and paralegals in the area of family law in Travis County and that the fees he charged were "reasonable and necessary" compared to other similarly-situated, board-certified family law attorneys. Barrett provided sixty-one pages of detailed billing records that show Robertson incurred $107,321 in fees for his services. The billing records detail the individual legal service or support task performed, the time it took to perform the task rounded to the nearest tenth of an hour, the person who performed the task, and the fee charged for each task. The entries are redacted to omit names, places, and exact subject matter of the task. According to his billing records, Barrett engaged

16

in trial preparations, made court appearances on Robertson's behalf, held meetings, and made communications. Barrett's support staff wrote letters, drafted motions, held conversations and prepared for trial. Barrett's representation spanned at least twenty months. Kogel did not file a counter-affidavit or present other evidence to controvert the reasonableness of Barrett's fees.

Mr. Dyer, who performed other legal services for Robertson in this matter, also filed an affidavit and billing records to support the $22,740 that Dyer charged for his services. Dyer averred that he has been licensed to practice law in Texas since 1961, that he practices exclusively in international family law, that he is familiar with the billing rates for family law attorneys in Travis County, that he charges $350 per hour, and that his fees were "reasonable and necessary" in this case. Dyer's bills reflected that he represented Robertson in court, prepared for and participated in depositions, conducted legal research, monitored the Belgian proceedings, held meetings and had conversations related to the case. Dyer represented Robertson for at least five months and presented three bills. The billing statements itemize the tasks Dyer performed during each billing period and the associated legal fees. Although the bills do not indicate how many hours were spent on each legal task, dividing each bills' total fee by Dyer's $350 hourly rate yields the total hours it took Dyer to complete the enumerated legal tasks. Kogel did not present any evidence to controvert the reasonableness of the fees charged by Dyer, nor does she cite legal authority for the proposition that assessing a fee's reasonableness requires that each legal task be recorded with precise time details.

The district court considered all of the evidence when it awarded attorney's fees for Robertson's prosecution of the case. Barrett and Dyer provided clear, direct and uncontroverted evidence of attorney's fees; we consider this evidence true as a matter of law. *Petco Animal*

17

*Supplies, Inc.*, 144 S.W.3d at 567; *see Knighton*, 856 S.W.2d at 210. Furthermore, Kogel did not file a controverting affidavit challenging the fees nor did she otherwise provide any controverting evidence to the district court. Thus, in the absence of controverting evidence, Barrett's and Dyer's fees affidavit support the district court's award of attorney's fees. *See Moody Nat'l Bank*, 946 S.W.2d at 525. Although all of the *Andersen* factors are not contained in each affidavit, we hold that the district court had evidence in the form of uncontroverted affidavits upon which to base its decision, and we cannot say that the award was so arbitrary or unreasonable as to require reversal. *See Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 397 (Tex. App.—Corpus Christi 2000, no pet.). We overrule Kogel's third issue.

**Attorney's Fees as Child Support**

In her fourth issue, Kogel contends that the district court erred by characterizing the attorney's fees as "in the nature of child support." We agree and modify the district court's order to delete all characterizations of attorney's fees as "in the nature of child support" and, instead, we characterize the awards as debts.

The Texas Constitution provides that no person shall be imprisoned for debt. Tex. Const. art. 1, § 18. Although an order requiring payment of debt may be enforced through legal processes, a confinement order premised on a failure to pay a debt is void. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005). A person may be confined under a court's contempt powers for failure to pay child support because the obligation to support a child is considered a *legal duty* and not a debt. *Id*. With the exception of child support enforcement actions, Texas law holds that attorney's fees may only be awarded as costs enforceable as debt. *Finley v. May*, 154 S.W.3d 196, 199 (Tex.

18

App.—Austin 2004, no pet.); *see* Tex. Fam. Code Ann. §§ 106.002, 157.167 (West Supp. 2005). Attorney's fees incurred to enforce a child support order can be characterized as child support. *See Finley*, 154 S.W.3d at 199. The legislature distinguishes between the assessment of fees and costs in enforcement actions and modification suits because of the potentially serious consequences that stem from an award of fees as child support. *Id.*

In its enforcement order, the district court awarded Robertson attorney's fees and characterized the entire award as "in the nature of child support." The awards for Barrett's and Dyer's fees include both fees incurred to enforce the child support order, which may be properly characterized as "in the nature of child support," and fees incurred in the modification suit, which may only be awarded as costs enforceable as debt. *See* Tex. Fam. Code Ann. §§ 106.002, 157.167. Neither the district court's order nor the evidence in the record segregate fees incurred to enforce child support from those incurred to modify the custody and possession order, which are only enforceable as debt. Thus, should Kogel fail to pay both awards in full, she is subject to fine or confinement for failure to pay child support. *See Finley*, 154 S.W.3d at 199.

We hold that the district court's award of attorney's fees incorrectly characterizes a portion of each fee award as "in the nature of child support," and impermissibly subjects Kogel to fine or confinement for failure to pay a debt. *See* Tex. Const. art. 1, § 18. Because we cannot distinguish which portion of the fees are "child support" and which are "debt," we reform the district court's order by deleting the characterization of the awards as "in the nature of child support." *See* Tex. R. App. P. 43.2(c). The awards are only enforceable as debts.

**Contempt Issues**

19

In her fifth issue, Kogel challenges the contempt order the district court entered as an abuse of discretion and asserts that the order denies Kogel due process of law. In its child support enforcement order, the district court found Kogel in contempt of the SAPCR final court order because she failed to surrender C.R. The district court sentenced Kogel to 180 days in jail but suspended the sentence on the condition that Kogel comply with the provisions of the modification and child support enforcement orders for two years. The terms of the enforcement order require Kogel to pay Robertson back child support, refrain from removing C.R. from Texas, pay Robertson for Barrett's and Dyer's attorney's fees, and pay for half of the ad litem's attorney's fees.[3] If Kogel fails to comply, the district court can revoke the suspension of her contempt sentence. Kogel asserts that the enforcement order is unconstitutional because under its terms, Kogel could be confined for not paying her debts, the attorney's fees awards. *See* Tex. Const. art. 1, § 18.

Contempt orders, even when combined with an appealable order, are unappealable by direct appeal. *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied). A contempt order is subject to review by petition for writ of habeas corpus or a petition for writ of mandamus. *Id.* A writ of habeas corpus will issue if the district court's contempt order is void, either because it is beyond the court's power or because the relator has not been afforded due process. *In re Henry*, 154 S.W.3d at 596.

---

[3] In her brief, Kogel states, "It was improper for the trial court to order [Kogel] to pay the [ad litem's] attorney's fees, especially considering that the suspension of commitment for contempt of court requires [Kogel] to 'comply with all provisions of this order for a period of two (2) years . . . .'" Kogel seems to imply that it is improper to characterize the ad litem's fees as "child support." The enforcement order characterizes the ad litem's fees as a debt and we find no evidence in the record that suggests otherwise. Kogel also implies that the award itself is improper. She does not offer authority or argument to support this contention and, thus, has not preserved this issue for review. *See* Tex. R. App. P. 33.1, 38.1(h).

20

Kogel cannot petition for habeas review because she has not been confined. *See id.* Thus, Kogel must petition for review through a writ of mandamus. *See id.* Mandamus relief requires a showing of no adequate remedy by appeal and a clear abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840-41 (Tex. 1992). Mandamus is not issued as a matter of right but at the discretion of the court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). Kogel's request for mandamus is overruled.[4]

## CONCLUSION

We overrule Kogel's first, second, third and fifth issues. We modify the district court's enforcement order to remove language that characterizes the attorney's fees award as enforceable "in the nature of child support" and, as modified, we affirm the judgment of the district court.

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Modified and, as Modified, Affirmed

Filed: December 2, 2005

---

[4] We note that Kogel's underlying argument is flawed. Kogel was held in contempt for disobeying a court order and was sentenced to confinement as punishment. The district court suspended the sentence conditioned on Kogel's compliance with all terms of the child support enforcement order. If Kogel fails to comply with the terms of the enforcement order, the earlier sentence will be reinstated. One term of the enforcement order is payment of the attorney's fees. Should Kogel fail to pay the attorney's fees, the suspension will be lifted and she will be jailed, not for failure to pay a debt, but for the earlier contempt of a court order.