

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00107-CV

ERIC SALAS,

                                                                    Appellant

 v.

CHRIS CHRISTENSEN SYSTEMS, INC.,

                                                                    Appellee

From the 77th District Court
Freestone County, Texas
Trial Court No. 10-033-A

## MEMORANDUM OPINION

By thirteen issues in this restricted appeal, appellant, Eric Salas, complains about several orders and a default judgment granted in favor of appellee, Chris Christensen Systems, Inc. (hereinafter "Christensen"). We affirm as modified.

### I. BACKGROUND

On June 1, 2008, Christensen, a renowned manufacturer and distributor of "high quality dog grooming products that are used by dog show enthusiasts around the world," hired Salas, a pet handler and groomer, to serve as Vice-President of Sales and

Education Director. Prior to the commencement of his employment, Salas signed a Non-Compete and Confidentiality Agreement ("Agreement"). Christensen asserted in the trial court that the Agreement was necessary because the company is an industry leader in the manufacturing and distribution of dog grooming products, and through his employment, Salas received training about Christensen's unique systems and other trade secrets, including its confidential customer and distributor list and ingredients and manufacturing methods for its products. According to the Agreement, Salas agreed, for a period of five years after separation from Christensen, to not:

> (a) directly or indirectly interfere with, or endeavor to entice away from the Company [Christensen] any clients or accounts with whom the Employee [Salas] had direct contact with at any time during his or her employment at Company, or for or with any other person, firm, corporation, partnership, joint venture, association, or other entity whatsoever, which is or intends to be engaged in providing and manufacturing pet supplies and related products manufactured and distributed by Company.
>
>     . . . .
>
> (c) induce or attempt to induce any supplier, licensee[,] or other business relation of the Company to cease doing business with the Company, or in any way interfere with the relationship between any such supplier, licensee[,] or business relation and the Company.

Salas also agreed not to:

> communicate, divulge, use, or disclose for use by any other person, firm, corporation, partnership, joint venture, association[,] or other entity whatsoever, any information or knowledge, known, disclosed[,] or otherwise obtained by him/her during his/her employment with Company (including information and knowledge conceived, discovered[,] or developed by Employee), which is not generally known in the pet supply manufacturing and distribution industry which relates to the business of the Company, or is in the nature of a trade or business secret of the Company or other Confidential material, unless publicly available

or required by a court of law or government agency. Further, Employee agrees that he/she will not work for any employer in any capacity to whom or to whose benefit he/she has divulged any trade secret, client, customer, or other confidential information of the Company.

After signing the Agreement, Christensen provided Salas with training and education regarding the company's product lines, and Salas was provided access to confidential information regarding the company's products, manufacturing and distribution processes, and many other trade secrets. Company President Chris Christensen testified at trial that the information that Salas had access to was very sensitive and that the company went to great lengths to ensure that the information remained confidential.

With respect to his job responsibilities, Salas promoted and marketed Christensen's dog-grooming products to the company's distributors and at dog shows throughout the United States. In addition, Salas conducted educational classes for participants and enthusiasts at the dog shows. As compensation for his services, Christensen paid Salas a salary and various benefits, including a house in Freestone County, Texas, though his job required that he travel much of the year.

On September 3, 2009, Salas resigned from the company. In the trial court, Christensen alleged that within forty-eight hours of his resignation, Salas contacted the company's main competitor in the dog-grooming industry, Pure Paws, and began promoting and marketing their products while using confidential information obtained from Christensen for the benefit of Pure Paws. Christensen also alleged that Salas induced two of Christensen's main distributors, A Magic Reflection and Rens Pet

Depot, to discontinue selling Christensen products and begin promoting and selling a competitor's products. According to Christensen, these acts constitute violations of the Agreement and resulted in Christensen losing $172,465.42 in profits.

On January 28, 2010, Christensen filed suit against Salas, seeking a temporary injunction and actual and exemplary damages. In its original petition, Christensen asserted that Salas had breached the Agreement he had signed with the company, misappropriated Christensen's trade secrets, converted Christensen's confidential information, and tortiously interfered with Christensen's prospective business relations. Salas filed an "Answer & Defenses" on February 26, 2010. A couple days later, Salas filed an amended "Answer & Defenses."[1] Christensen's temporary injunction request was set to be heard on March 4, 2010.

However, before the March 4, 2010 hearing, Salas faxed the trial court a letter, stating the following:

> Please see attached. This matter is scheduled for a hearing on 3/4/10 at 9:00 a.m. I am currently a resident of Wildwood, FL[,] and I am currently in Chicago and will not return for another two weeks and would request that I attend this hearing telephonically. Thank you.

Later, Wendy Iaconetti filed a notice of appearance on Salas's behalf informing the trial court that she and Salas would be appearing for the temporary injunction hearing by telephone.

---

[1] Both his February 26, 2010 and March 1, 2010 answers appear to have been filed pro se, as neither contain statements regarding legal representation, and both answers are signed solely by Salas. Later, the trial court discovered that these filings were filed by another individual, Wendy Iaconetti, on Salas's behalf.

At the March 4, 2010 hearing, Iaconetti represented Salas and stated that she is an attorney licensed in Florida with the firm of Mandelbaum, Fitzsimmons & Hewitt.[2] Iaconetti informed the trial court that, although not speaking, Salas was participating in the hearing via conference call. In addition, Iaconetti requested that the trial court continue the hearing, but the trial court denied her request. Chris Christensen, the sole witness who testified at the hearing, detailed the allegations against Salas. At the conclusion of the hearing, the trial court granted Christensen's request for a temporary injunction and set the temporary injunction bond at $2,500. The case was set for trial on October 4, 2010.

Shortly after the temporary injunction hearing, Christensen discovered that Iaconetti is not a licensed attorney in Florida or any other state; instead, she was a legal assistant with the law firm of Mandelbaum, Fitzsimmons & Hewitt. Iaconetti later executed an affidavit explaining the situation:

> I was contacted by Eric Salas to assist him with the lawsuit filed by Chris Christensen Systems, Inc. I prepared the answer that Mr. Salas filed in this case at his request. I contacted the 77th District Court about appearing as Mr. Salas's attorney at the hearing on the Temporary Injunction. In order to appear at the hearing, I forged the fax letterhead for the law firm of Mandelbaum, Fitzsimmons & Hewitt, and listed my name as an attorney of the firm. At the time, I was employed as a paralegal for Mandelbaum, Fitzsimmons & Hewitt.
>
> I appeared at the hearing on March 4, 2010, and misrepresented myself to the court that I was Eric Salas's attorney. I am not, nor have I ever been, a licensed attorney in Florida or Texas or any other state. Eric Salas knew that I was not a licensed attorney when he asked me to attend the hearing on March 4, 2010 on his behalf. Eric Salas was also present on

---

[2] Though Iaconetti was not licensed in Texas and had not satisfied the requirements for pro hac vice admission for this case, the trial court allowed Iaconetti to listen to the hearing and to make arguments.

the telephone on March 4, 2010, and heard me tell the court that I was a licensed attorney in Florida, which he knew was not true.

I prepared the answer and attended the hearing for the benefit of Eric Salas because he asked me to assist him in this matter.

Christensen subsequently revealed this discovery to the trial court; the trial court issued a show-cause order and, on May 6, 2010, conducted a hearing on a motion for contempt filed by Christensen.[3] Salas did not appear for this hearing. The trial court ultimately: (1) concluded that Salas had committed a fraud on the court; (2) held Salas in contempt; (3) awarded Christensen $3,650 in attorney's fees; and (4) limited Salas's discovery to requests for disclosure, interrogatories, and requests for production.

Later, Christensen propounded discovery on Salas in the form of requests for disclosure, requests for production, and interrogatories. Salas did not respond to Christensen's discovery requests, so Christensen moved to compel Salas to respond. The trial court granted Christensen's motion to compel and ordered Salas to provide responses to Christensen's discovery within fourteen days.

In the meantime, Christensen noticed Salas's deposition. Once again, Salas failed to appear; thus, Christensen took a certificate of non-appearance. Additionally, Salas did not provide any responses to Christensen's discovery, a clear violation of the trial court's order on Christensen's motion to compel. As a result, Christensen filed a second contempt motion, and the trial court issued a second show-cause order.

---

[3] The record contains a motion to dismiss Christensen's contempt motion filed by Iaconetti on behalf of herself and Salas. In this motion, Iaconetti stated, among other things, that she met Salas while showing dogs, but she denied ever representing Salas and noted that she barely knew him. However, Iaconetti executed her affidavit, which contradicts all of the contentions made in the motion to dismiss, after the motion to dismiss was filed.

On June 30, 2010, the trial court conducted a hearing on Christensen's second contempt motion. Salas did not appear at this hearing. Counsel for Christensen represented to the trial court that Salas had not complied with the trial court's previous contempt order requiring him to answer discovery and pay Christensen $3,650 in attorney's fees. Counsel also informed the trial court that Salas failed to appear for his noticed deposition. At the conclusion of this hearing, the trial court entered a second contempt order. Having already imposed lesser sanctions, the trial court ordered Salas to pay an additional $1,890 in attorney's fees and struck Salas's answer.

Thereafter, Christensen filed a first amended petition and request for a permanent injunction. This filing mirrored Christensen's original petition except that it added claims against Salas for fraud, fraud in the inducement, and breach of fiduciary duty. On October 4, 2010, the trial court conducted a final hearing on Christensen's claims, including its request for a permanent injunction. Salas did not appear for this hearing. Because of Salas's continued contemptuous conduct, the fact that Salas's answer had been stricken, and Salas's failure to attend the hearing, the trial court granted a default judgment in favor of Christensen. The trial court's order granted Christensen's request for a permanent injunction and noted that Christensen had established its fraud claim. With regard to damages and attorney's fees, Chris Christensen and counsel for Christensen testified. After hearing the testimony, the trial court awarded Christensen $172,465.42 in actual damages, $175,000 in exemplary damages, $40,000 in attorney's fees for work done in the trial court, $25,000 in attorney's fees for an appeal to this Court, $25,000 for an appeal to the supreme court, and $284 in

court costs. In addition, the trial court's permanent injunction extended the terms of the temporary injunction until September 3, 2014. The order granting relief to Christensen was signed by the trial court on October 4, 2010. This, however, is not the end of this saga.

After the trial court entered its judgment, Christensen served Salas with post-judgment discovery, including interrogatories in aid of judgment. Salas did not respond to the discovery request, and, in response, Christensen filed another motion to compel. In light of this and Salas's failure to comply with the previous contempt orders, the trial court issued a third show-cause order and ultimately granted Christensen's motion to compel. Salas was given an additional fourteen days to respond to Christensen's discovery requests. Salas did not respond, and the trial court subsequently entered a third contempt order. This time, however, the trial court issued a capias ordering that Salas be arrested and brought before the trial court to explain his actions.

Thereafter, Salas filed his notice of restricted appeal, challenging the trial court's October 4, 2010 order and the trial court's third contempt order.

## II. RESTRICTED APPEAL

To attack a trial court's judgment by restricted appeal, Salas must show that: (1) a notice of appeal was filed within six months of the date the complained-of judgment was signed; (2) Salas was a party to the suit that did not participate in the hearing that resulted in the judgment or order; (3) Salas did not timely file a post-judgment motion, request findings of fact and conclusions of law, or file a notice of appeal within the time

permitted under Texas Rule of Appellate Procedure 26.1(a); and (4) the complained-of error is apparent from the face of the record. *See* TEX. R. APP. P. 26.1(a), 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *see also Long v. Tex. Dep't of Criminal Justice—Inst. Div.*, No. 10-10-00199-CV, 2010 Tex. App. LEXIS 9031, at *2 (Tex. App.—Waco Nov. 10, 2010, no pet.) (mem. op.). In this case, it is undisputed that Salas timely filed his notice of appeal; that Salas was a party that did not participate at the hearings on Christensen's permanent injunction request and third contempt motion; and that Salas did not timely file any of the documents listed in rule 26.1(a). The crux of this appeal centers on whether the complained-of errors on appeal are apparent from the face of the record.

"[A] restricted appeal requires error that is *apparent*, not error that may be *inferred*." *Gold v. Gold*, 145 S.W.3d 212, 213 (Tex. 2004) (emphasis in original). And when determining whether error is apparent from the face of the record, we consider all the papers on file in the appeal, including the reporter's record. *Norman Comm'cns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam).

### III. CHRISTENSEN'S PLEADINGS

In his first issue, Salas complains that the trial court erred in granting Christensen's requests for a temporary and permanent injunction because the pleadings were unverified and, thus, defective. We first note that Salas, in his notice of restricted appeal, challenges the trial court's October 4, 2010 order granting Christensen's request for a permanent injunction, not the trial court's temporary-injunction order. *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other

appealable order must file a notice of appeal. . . . The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause."), 25.1(d) (requiring appellant to state the date of the judgment or order appealed from and the desire to appeal that order). Moreover, any argument pertaining to the temporary injunction that was granted would be moot as the terms of that order have expired. *See Faddoul v. Oaxaca*, 52 S.W.3d 209, 212 (Tex. App.—El Paso 2001, no pet.) ("A temporary injunction becomes moot when it becomes inoperative due to a change in status of the parties or the passage of time, or because it has expired."); *Tex. Educ. Agency v. Dallas Indep. Sch. Dist.*, 797 S.W.2d 367, 369 (Tex. App.—Austin 1990, no writ).

In any event, it is undisputed that neither of Christensen's requests was verified by an affidavit executed by the applicant. Generally, applications for injunctive relief are required to be verified, *see* TEX. R. CIV. P. 682; however, the verification requirement of rule 682 can be waived. *Crystal Media, Inc. v. HCI Acquisition Corp.*, 773 S.W.2d 732, 734 (Tex. App.—San Antonio 1989, no writ); *see Ex parte Stiles*, 958 S.W.2d 414, 419 n.2 (Tex. App.—Waco 1997, pet. denied). When a full evidentiary hearing on evidence has been held, a verified petition for injunctive relief is not required. *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 298 (Tex. App.—Houston [14th Dist.] 2002, no pet.), *overruled, in part, on other grounds by Glassman v. Goodfriend*, No. 14-09-00522-CV, 2011 Tex. App. LEXIS 4189, at *23 (Tex. App.—Houston [14th Dist.] June 2, 2011, no pet.) (en banc); *see Town of Palm Valley v. Johnson*, 17 S.W.3d 281, 288 (Tex. App.—Corpus Christi 2000, pet. denied); *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 882 (Tex. App.—Houston [14th Dist.] 1994,

writ denied).  "The reason for not requiring literal compliance with Rule 682 is that the writ of injunction is not granted upon the averments of the petition alone, but upon sworn and competent evidence admitted at a full hearing."  *Nguyen*, 93 S.W.3d at 298.  Here, the trial court conducted full evidentiary hearings for each of the injunction requests.  At both hearings, Chris Christensen provided sworn testimony supporting the injunction requests.  Because the trial court conducted full evidentiary hearings on both of Christensen's injunction requests, we conclude that Salas waived his challenges regarding Christensen's unverified pleadings.  *See Nguyen*, 93 S.W.3d at 298; *see also Ex parte Stiles*, 958 S.W.2d at 419 n.2; *Crystal Media, Inc.*, 773 S.W.2d at 734.  Therefore, based on the foregoing, we overrule Salas's first issue.

## IV. THE SUFFICIENCY OF THE EVIDENCE AS TO THE TEMPORARY AND PERMANENT INJUNCTIONS

In his sixth and eleventh issues, Salas contends that the evidence supporting the trial court's temporary and permanent injunction orders is insufficient.

### A.  The Temporary Injunction

As we have previously noted, Salas did not designate, in his notice of restricted appeal, his intent to appeal the trial court's temporary injunction.  *See* TEX. R. APP. P. 25.1(c), (d).  Moreover, Salas did not file a notice of interlocutory appeal challenging the temporary injunction, and the terms of the temporary injunction have expired, rendering any complaint about the order moot.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2008) (providing for the interlocutory appeal from an order granting a temporary injunction); *see also Faddoul*, 52 S.W.3d at 212; *Tex. Educ. Agency*, 797 S.W.2d

at 369.  Accordingly, we overrule Salas's sixth issue, which complains about the trial court's temporary injunction order.

## B.  The Permanent Injunction

With regard to the permanent injunction, Salas complains that Christensen did not admit into evidence a copy of the Agreement and that the trial court wrongfully concluded that the striking of his pleading was sufficient evidence to support injunctive relief.  He also contends that "there was no independent evidence that irreparable harm would result to [Christensen]."

Whether to grant or deny a permanent injunction lies within the trial court's discretion.  *See Operation Rescue-Nat'l v. Planned Parenthood of Houston*, 975 S.W.2d 546, 560 (Tex. 1998).  We do not substitute our judgment for the trial court's judgment "unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion."  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).  We view the evidence in the light most favorable to the trial court's judgment.  *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 700 (Tex. App.—San Antonio 1998, pet. denied).  If some evidence appears in the record that reasonably supports the trial court's decision, there is no abuse of discretion.  *Id.*  The trial court abuses its discretion only if the record contains no evidence supporting the trial court's findings.  *Operation Rescue-Nat'l*, 975 S.W.2d at 560.

To be entitled to a permanent injunction, the requesting party must plead and prove the following:  (1) a wrongful act; (2) imminent harm; (3) irreparable injury; and (4) no adequate remedy at law.  *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742

(Tex. App.—Houston [1st Dist.] 2002, pet. denied) (op. on reh'g). An injunction will not be issued to prevent injury that is purely conjectural or speculative. *Id.*

Generally, contractual rights are not enforced by writs of injunction because the inadequate remedy at law and irreparable injury prongs are rarely shown when a suit for damages for breach of contract is available. *Canteen Corp. v. Republic of Tex. Props.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. That is, an applicant must establish that there is no adequate remedy at law for damages. *Cardinal Health Network Staffing, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.). An adequate remedy at law is one that is complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Id.*

Texas Rule of Civil Procedure 215.2 specifically authorizes the sanctions imposed by the trial court in this case—prohibiting Salas from conducting discovery, striking his answer, and entering a default judgment.[4] *See* TEX. R. CIV. P. 215.2(b). Here, Salas does not assert that the trial court's sanctions were excessive or unjust in accordance with the standards articulated in *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913

---

[4] The trial court imposed several degrees of sanctions in order to promote compliance with trial court orders and the discovery process. *See Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004) (stating that, ordinarily, a trial court should test the effectiveness of lesser sanctions by implementing and ordering each sanction that would be appropriate to promote compliance with the trial court's orders in the case). However, Salas continually disregarded all trial court orders and discovery requests, which prompted the trial court to, among other things, strike his answer. *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (noting that the striking of a party's pleadings is among "the most devastating" sanctions a trial court may imposed and may only be imposed in "exceptional cases" where they are "clearly justified"); *see also TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917-18 (Tex. 1991).

(Tex. 1991). Therefore, because the striking of Salas's answer resulted in a default judgment, all factual allegations set forth in Christensen's petition were deemed admitted, except for the amount of damages. *See* Tex. R. Civ. P. 243; *Cire*, 134 S.W.3d at 839 ("'Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it.'") (quoting *TransAmerican*, 811 S.W.2d at 918); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984) (holding that all causes of action and facts pleaded are established in a default judgment); *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 537-38 (Tex. App.—San Antonio 2005, pet. denied) (noting that a trial court rendering a default judgment is required to hear evidence of unliquidated damages, regardless of whether the default results from the defendant's failure to answer or from discovery sanctions) (citing Tex. R. Civ. P. 243).

Nevertheless, when viewed in the light most favorable to the trial court's order, the established evidence supports the trial court's finding that Christensen has an irreparable injury for the remainder of the term of the Agreement. Chris Christensen testified that Salas, as one of two company Vice-Presidents, obtained confidential information and access to numerous trade secrets of the company during his employment. And once he quit working for Christensen, Salas allegedly used the confidential information and trade secrets obtained from Christensen, including

chemical formulas, current and prospective product lists, manufacturing processes, distribution processes, customer lists, and new product designs, to actively compete with Christensen by enticing distributor A Magic Reflection to cease doing business with Christensen and to, instead, conduct business with Salas's new employer, Pure Paws. Christensen also alleged that Salas enticed distributor Rens Pet Depot to reduce its business with Christensen. Chris Christensen asserted that the company went to great lengths to protect this proprietary information and that, once Salas divulged this information to Christensen's competitors, the company was permanently and irreparably harmed and would likely be harmed in the future as a result of Salas's actions.

Injunctive relief may be employed when one breaches his confidential relationship in order to misuse a trade secret. *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 341 (Tex. 1964). Injunctive relief is also proper to prevent a party, which has appropriated another's trade secrets, from gaining an unfair market advantage. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). Irreparable harm may also be established by evidence that disclosure of trade-secret information could enable competitors to misuse the marketing plans and strategies of the applicant and avoid the less successful strategies as well as the risk and expense of developing the strategies. *Mabrey v. Sandstream, Inc.*, 124 S.W.3d 302, 319 (Tex. App.—Fort Worth 2003, no pet.). The misuse of trade secrets leading to the loss of an existing business is another example of irreparable harm entitling an applicant to injunctive relief. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 602

(Tex. App.—Amarillo 1995, no writ).  The potential damages caused by Salas's actions of appropriating and implementing Christensen's trade secrets and confidential information for the benefit of Christensen's competitors in the future arguably are not complete and cannot be easily calculated; therefore, a legal remedy is inadequate. *See T-N-T Motorsports*, 965 S.W.2d at 24; *Unitel Corp. v. Decker*, 731 S.W.2d 636, 641 (Tex. App.—Houston [14th Dist.] 1987, no writ) (holding that, with respect to injunctive relief, proof of a continued breach of a non-competition agreement by a highly-trained employee constitutes prima facie proof of probable injury); *Martin v. Linen Sys. for Hosps, Inc.*, 671 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1984, no writ) (same); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011 (West 2008) (providing that a writ of injunction may be granted if, among other things, "a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual").

Based on the foregoing, we conclude that the evidence supporting the trial court's permanent injunction is sufficient, and as such, cannot say that the trial court abused its discretion in granting Christensen's permanent injunction request.  *See Butnaru*, 84 S.W.3d at 204; *see also Operation Rescue-Nat'l*, 975 S.W.2d at 560.

Though we uphold the trial court's permanent injunction on appeal, Christensen acknowledges that the breadth of the injunction, as stated in the trial court's order, does not correspond to the pleadings filed in this case.  In its live pleading, Christensen requested that Salas be required to comply with the Agreement until August 1, 2014;

however, the trial court enjoined Salas until September 3, 2014. Because the judgment must comply with the pleadings and evidence offered at trial, we reform the trial court's judgment to impose injunctive relief until August 1, 2014, the date requested by Christensen in its live pleading, and affirm the order as modified. *See* TEX. R. CIV. P. 301 (providing that the judgment of the court shall, among other things, conform to the pleadings); TEX. R. APP. P. 43.2(b) (authorizing appellate courts to modify the trial court's judgment and affirm it as modified). We overrule Salas's eleventh issue.

## V. SERVICE OF PROCESS AND JURISDICTION

In his second and third issues, Salas contends that the trial court did not acquire jurisdiction over him because service of process was defective. Salas also argues that the trial court erred in granting Christensen's motions for substitute service because the motions did not comply with Texas Rule of Civil Procedure 106(b). *See* TEX. R. CIV. P. 106(b).

## A. Applicable Law

Rule 106(b) provides the following:

> Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service
>
> (1) By leaving a true copy of the citation with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

(2) In any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

TEX. R. CIV. P. 106(b).

## B. Service of Christensen's Original Petition and Application for Temporary Injunction on Salas

Salas complains about the trial court's granting of Christensen's motions for substitute service filed on January 28, 2010; March 22, 2010; and January 6, 2011. The January 28, 2010 motion requested permission to serve Salas personally with a copy of Christensen's original petition and application for temporary injunction at a dog show in Atlanta, Georgia. Salas cites a litany of cases holding that if the record does not show that service was effectuated in strict compliance with the Texas Rules of Civil Procedure, then the trial court did not acquire jurisdiction over him and a default judgment cannot withstand direct attack. *See, e.g., Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *C.W. Bollinger Ins. Co. v. Fish*, 699 S.W.2d 645, 647 (Tex. App.—Austin 1985, no writ). If service of process is defective, the trial court fails to acquire jurisdiction over the person served. *N.C. Mut. Life Ins. Co. v. Whitworth*, 124 S.W.3d 714, 722 (Tex. App.—Austin 2003, pet. denied); *see Dunn*, 800 S.W.2d at 836.

Here, Christensen attempted to serve Salas several times at his address: 601 Gray Avenue, Wildwood, Florida 34785.[5] These efforts were unsuccessful, so Christensen served Salas, a non-resident of Texas, through the Texas Secretary of State's office. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.044-.045 (West 2008). The secretary

---

[5] It is undisputed that Salas's address is: 601 Gray Avenue, Wildwood, Florida 34785. In fact, Salas's original and amended answers both list this address as his place of residence. It is also undisputed that Salas does business in Texas.

of state certified that a copy of the citation and Christensen's original petition and application for temporary injunction was received on January 29, 2010, and a copy was forwarded by certified mail to Salas at his Wildwood, Florida address on February 3, 2010. The certification notes that the process was returned as "unclaimed." Even though the process was returned as "unclaimed," Texas courts have held that a non-resident's refusal or failure to claim the certified letter from the secretary of state does not deprive the trial court of jurisdiction obtained under the Texas Long Arm Statute. *See Zuyus v. No'Mis Comm'cns, Inc.*, 930 S.W.2d 743, 746 (Tex. App.—Corpus Christi 1996, no writ); *Labor Force, Inc. v. Hunter, Farris & Co.*, 601 S.W.2d 146, 146-47 (Tex. App.—Houston [14th Dist.] 1980, no writ); *see also Glynn Corp. v. Precept Bus. Prods., Inc.*, No. 05-97-0777-CV, 1999 Tex. App. LEXIS 4548, at **6-7 (Tex. App.—Dallas June 21, 1999, no pet.) (not designated for publication). Given this, we cannot say that the trial court lacked jurisdiction over Salas.

Nevertheless, it is noteworthy that Salas filed an answer to Christensen's lawsuit and even appeared at the March 4, 2010 temporary injunction hearing. These actions waive any complaint Salas may have regarding service of process of Christensen's original petition and application for temporary injunction. *See* TEX. R. CIV. P. 121; *Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex. 1999) (stating that the filing of an answer constitutes a general appearance, thereby dispensing with the need for the issuance and service of citation); *In re $475,001.16*, 96 S.W.3d 625, 628-29 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that the filing of an answer waives any complaints about service).

**C.  Service of Christensen's Motions for Contempt**

The March 22, 2010 motion pertained to service of Christensen's first motion to hold Salas and Iaconetti in contempt and order to show cause, and the January 6, 2011 motion involved Christensen's third motion to hold Salas in contempt and order to show cause.  Salas's argument pertaining to both the March 22, 2010 and January 6, 2011 motions is that Christensen failed to set forth the efforts made to obtain service on Iaconetti, as required under Texas Rule of Civil Procedure 106(a)(1) and (a)(2).  *See* TEX. R. CIV. P. 106(a)(1), (a)(2).

With regard to Christensen's contempt motions, Salas relies on the wrong service rule.  The supreme court has held that:

> To serve items other than citation, however, parties may rely on rules 21 and 21a, which require service of every "notice" required by the rules and "every pleading, plea, motion, or other form of request required to be served . . . other than the citation to be served upon the filing of a cause of action."

*Tex. Natural Res. Conservation Comm'n v. Sierra Club*, 70 S.W.3d 809, 813 (Tex. 2002) (quoting TEX. R. CIV. P. 21a); *see* TEX. R. CIV. P. 21 (requiring every pleading, plea, motion, or application to the court for an order to be filed with the clerk of court and served on all other parties).  Specifically, rule 21a provides, in relevant part, that:

> Every notice required by these rules, and every pleading, plea, motion, or other form of request required to be served under Rule 21, other than the citation to be served upon the filing of a cause of action and except as otherwise expressly provided in these rules, may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be, either in person or by agent or by courier receipted delivery or be certified or registered mail, to the party's last known address, or by telephonic document transfer to the

recipient's current telecopier number, or by such other manner as the court in its discretion may direct.

. . . .

Notice may be served by a party to the suit, an attorney of record, a sheriff or constable, or by any other person competent to testify. The party or attorney of record shall certify to the court compliance with this rule in writing over signature and on the filed instrument. A certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service.

TEX. R. CIV. P. 21a. Due process requires that the method of service be reasonably calculated, under the circumstances, to apprise interested parties of the proceeding and to provide them an opportunity to present objections. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-85, 108 S. Ct. 896, 898-99, 99 L. Ed. 2d 75 (1988).

When the adequacy of notice is challenged in a restricted appeal, the absence from the record of affirmative proof that notice was provided does not establish error. *Alexander*, 134 S.W.3d 845 ("[W]hen the record does not reflect whether notice was sent, that is insufficient to establish reversible error in a restricted appeal proceeding."); *see Gen. Elec. Co. v. Falcon Ridge Apartments Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991); *see also Carroll v. Bank of N.Y.*, No. 10-03-00319-CV, 2005 Tex. App. LEXIS 875, at *3 (Tex. App.—Waco Feb. 2, 2005, no pet.) (mem. op.). We presume that a trial court will hear a case only after proper notice if given. *See Welborn-Hosler v. Hosler*, 870 S.W.2d 323, 328 (Tex. App.—Houston [14th Dist.] 1994, no writ); *see also Carroll*, 2005 Tex. App. LEXIS 875, at *3. Thus, Salas has the burden of rebutting this presumption by affirmatively

showing lack of notice. *See Hosler*, 870 S.W.2d at 328; *see also Carroll*, 2005 Tex. App. LEXIS 875, at *3.

Because Salas had already been served with notice of this suit, Christensen needed only to comply with rule 21a with regard to the service of its contempt motions. *See Sierra Club*, 70 S.W.3d at 813. The trial court authorized Christensen to serve Iaconetti at the following address: 14908 Old Pointe Road, Tampa, Florida 33613-1617 "or wherever she may be personally found." She was served with notice of the show cause hearing and Christensen's motion for contempt on March 25, 2010 at 4:08 p.m. At that time, it had not been revealed that Iaconetti was not an attorney; instead, the trial court and Christensen were under the impression that Iaconetti was Salas's lawyer. Under rule 21a, Christensen was authorized to serve its March 22, 2010 contempt motion and notice of the show cause hearing on Iaconetti, Salas's attorney of record. *See* TEX. R. CIV. P. 21a. As such, we do not find any error on the face of the record with respect to Christensen's March 22, 2010 motion.[6]

With regard to Christensen's January 6, 2011 motion, Salas was served with several documents while he was at an address in Portland, Oregon. Chris Pfeiffer, a process server, averred that, in addition to notice of a show cause hearing on Christensen's January 6, 2011 motion, he served the following documents on Salas:

1. Order Granting Plaintiff's Motion to Compel Responses to Plaintiff's Interrogatories in Aid of Judgment (signed January 6, 2011);

---

[6] We also look disfavorably on any attempt by Salas to avoid service by using an agent to represent him and then disavowing of their relationship to otherwise render proper service under rule 21a invalid.

2. Order Granting Plaintiff's Motion to Hold Eric Salas and Wendy Iaconetti in Contempt as to Eric Salas (signed May 10, 2010);

3. Order Granting Plaintiff's Second Motion to Hold Eric Salas in Contempt (signed July 12, 2010); and

4. Final Judgment and Permanent Injunction (signed October 4, 2010).

Nevertheless, on appeal, Salas contends that he was not served with Christensen's January 6, 2011 contempt motion. Pfeiffer's affidavit and return of service undermines Salas's argument. And, as noted below, the record contains an additional document, which further undermines Salas's notice contention.

The trial court scheduled a hearing on Christensen's January 6, 2011 motion for February 1, 2011. At 9:06 pm. on January 31, 2011, Salas faxed to the trial court a motion for continuance. Despite allegedly not having notice of the February 1, 2011 hearing and Christensen's January 6, 2011 motion, Salas stated the following:

> I[,] Eric Salas[,] am requesting the court grant me a 30-day continuance to acquire counsel in this matter. I have just been served and have not been able to secure counsel in this short time period of being served. I am not avoiding this[;] I am requesting time for a fair representation.

Based on Pfieffer's affidavit and return of service and Salas's admission that he was served with Christensen's January 6, 2011 motion and had knowledge of the February 1, 2011 hearing pertaining to the motion, we conclude that Salas has not satisfied his burden of affirmatively showing lack of notice with regard to Christensen's January 6, 2011 motion and the February 1, 2011 hearing. *See Hosler*, 870 S.W.2d at 328; *see also Carroll*, 2005 Tex. App. LEXIS 875, at *3. Accordingly, we overrule Salas's second and third issues.

## VI. SALAS'S APPEARANCE

In his fourth issue, Salas asserts that the record contains insufficient evidence to demonstrate that he appeared in this matter. We disagree.

The record contains an answer and an amended answer filed by Salas. *See Phillips v. Dallas County Child Protective Servs. Unit*, 197 S.W.3d 862, 865 (Tex. App.—Dallas 2006, pet. denied) ("[F]iling an answer constitutes a general appearance, thereby dispensing with the need for the issuance and service of citation. Thus, filing an answer waives any complaints about service.") (internal citations omitted). In her affidavit, Iaconetti stated that she filed the answers on Salas's behalf and that Salas had contacted her to represent him in this matter. Iaconetti further stated that Salas was aware of her actions in this matter.

Salas appears to assert that the answers are defective because he did not sign them. Both answers are signed by an individual purporting to be Salas. Whether the signature is actually Salas's or not constitutes a factual determination, which was within the province of the trial court. *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005) (noting that it is within the province of the fact-finder to resolve conflicts in the evidence); *see also Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986) (stating that the making of factual findings are the exclusive province of the fact-finder). By conducting the various hearings in this matter and subsequently striking the answers in response to Salas's contemptuous actions, the trial court clearly believed that the answers were valid. Moreover, Salas's argument regarding the signatures on the answers requires the making of inferences based upon other filings in the record. As

noted earlier, in a restricted appeal, we are prohibited from assigning error based on inferences from the record. *See Gold*, 145 S.W.3d at 213; *see also Norman Comm'cns*, 955 S.W.2d at 270. Therefore, based on the foregoing, we reject Salas's complaint pertaining to the signatures on his answers.

Salas also argues that the answers filed cannot constitute an appearance in this case because the answers did not seek affirmative relief from the trial court. This contention is belied by statements made in the answers requesting that the trial court "not enter the requested temporary injunction and/or dismiss the Plaintiff's petition . . . ." In addition, Salas does not cite any authority supporting his contention.

Salas's remaining arguments in this issue pertain to Iaconetti's representation of him. He alleges that he had no idea that Iaconetti was acting on his behalf and that he did not participate via telephone at the March 4, 2010 temporary injunction hearing; therefore, the record does not demonstrate that he made an appearance in this matter.

These arguments require us to make inferences contrary to the evidence contained in the record. Once again, we note that we are prohibited from assigning error in a restricted appeal based upon inferences. *See Gold*, 145 S.W.3d at 213; *see also Norman Comm'cns*, 955 S.W.2d at 270. We are confined to analyzing the face of the record for error. *See Gold*, 145 S.W.3d at 213; *see also Norman Comm'cns*, 955 S.W.2d at 270. The language contained in Iaconetti's affidavit clearly shows that Salas was aware of her actions, including the filing of the answers, and that he did participate telephonically at the March 4, 2010 temporary injunction hearing. Based on the

foregoing, we conclude that the face of the record demonstrates that Salas made an appearance in this matter. As such, we overrule his fourth issue.

## VII. SUFFICIENCY OF THE EVIDENCE SUPPORTING THE TRIAL COURT'S FINDING THAT SALAS ENGAGED IN FRAUD AND A CONSPIRACY TO COMMIT FRAUD UPON THE COURT

In his fifth issue, Salas argues that there is insufficient evidence to support the trial court's finding that he engaged in fraud and a conspiracy to commit fraud upon the trial court. However, the substance of this argument is directed towards whether he made an appearance in this case. In arguing this issue, Salas does not cite any authority pertaining to evidentiary sufficiency, and, besides the title of his issue, he does not specifically argue that the trial court's fraud findings were not supported by sufficient evidence. As such, we conclude that this issue has been inadequately briefed and, therefore, waived. *See* TEX. R. APP. P. 38.1(i).

## VIII. SERVICE OF CHRISTENSEN'S FIRST AMENDED PETITION AND APPLICATION FOR PERMANENT INJUNCTION ON SALAS

In his seventh issue, Salas contends that the record contains insufficient evidence to show that he was served with Christensen's first amended petition and application for permanent injunction. In making this argument, Salas concedes that Christensen's service of its amended pleading complied with rule 21a. *See* TEX. R. CIV. P. 21a. Nevertheless, Salas asserts that Christensen was required to serve a new citation on him because Christensen's amended pleading "seeks a more onerous judgment than prayed for in the original pleading." *Smith v. Amarillo Hosp. Dist.*, 672 S.W.2d 615, 617 (Tex. App.—Amarillo 1984, no writ) (citing *Weaver v. Hartford Accident & Indem. Co.*, 570

S.W.2d 367, 370 (Tex. 1978); *Sanchez v. Tex. Indus., Inc.*, 485 S.W.2d 385, 387 (Tex. Civ. App.—Waco 1972, writ ref'd n.r.e.)).  It is undisputed that Christensen's amended pleading, which included new causes of action for breach of fiduciary duty and fraud, sought more relief than requested in its original petition and is, arguably, more onerous than the original petition.  However, Salas's reliance on *Smith*, *Weaver*, and *Sanchez* is misplaced, as each of these cases has been overruled on this proposition of law.  *See In re E.A.*, 287 S.W.3d 1, 3-5 (Tex. 2009).  The supreme court held that service of a new citation is not required for a default judgment based on a more onerous amended petition and that service of the amended petition under rule 21a is sufficient.[7]  *Id.* at 2-5. Given that Salas concedes that Christensen's service of its amended pleading complied with rule 21a and that service of a new citation is not required in this instance, we overrule Salas's seventh issue.  *See id.* at 1-5.

## IX. SUFFICIENCY OF THE EVIDENCE THAT SALAS TIMELY RECEIVED NOTICE OF TRIAL

In his eighth issue, Salas argues that the record does not contain sufficient evidence to demonstrate that he timely received notice of trial.  Specifically, Salas contends that did not receive forty-five days' notice of trial, as required by rule 245 of the Texas Rules of Civil Procedure.  *See* TEX. R. CIV. P. 245.

---

[7] The supreme court specifically noted the following:

> Rule 21a applies to all pleadings required to be served under Rule 21a other than the original petition and except as provided in the rules.  Nothing in the rules requires a plaintiff to serve a nonanswering defendant with new citation for a more onerous amended petition.  While a nonanswering defendant must be served with a more onerous amended petition in order for a default judgment to stand, we agree with the court of appeals that Rule 21a service satisfies that requirement. . . .  To the extent that *Weaver* conflicts with Rule 21a, the rule prevails.

*In re E.A.*, 287 S.W.3d 1, 4-5 (Tex. 2009).

Texas Rule of Civil Procedure 245 provides, in relevant part, that:

> The court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties.

TEX. R. CIV. P. 245.

At the March 4, 2010 temporary injunction hearing, the trial judge announced in open court that the matter would be set for a final hearing on October 4, 2010. Iaconetti, who was representing Salas at the time, indicated that she heard the announcement and acknowledged that it would not be a problem if the trial court set the case for a final hearing within six months. As is the case with most of his arguments, Salas presumes that Iaconetti was not acting on his behalf. However, Iaconetti's affidavit speaks to the contrary. Moreover, Salas's contention that Iaconetti was not acting on his behalf requires inferences to be made from the face of the record, which are impermissible in a restricted appeal. *See Gold*, 145 S.W.3d at 213; *see also Norman Comm'cns*, 955 S.W.2d at 270. In addition, notice given to a party's attorney or representative is imputed to the client, *see Am. Flood Research Ins. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006) (per curiam) (stating that an attorney's knowledge or notice that is acquired during the existence of the attorney-client relationship is imputed to the client); therefore, Salas received much more than the required forty-five days' notice under rule 245. *See* TEX. R. CIV. P. 245. And even if we were to accept Salas's contention that Iaconetti was not acting on his behalf, we note, once again, that the absence of any notice in the record does not

demonstrate on the face of the record that notice was not provided or received for purposes of a restricted appeal. *Alexander*, 134 S.W.3d at 850 ("[W]hen the record does not reflect whether notice was sent, that is insufficient to establish reversible error in a restricted appeal proceeding."). Accordingly, we overrule Salas's eighth issue.

## X. THE TRIAL COURT'S ACTUAL AND EXEMPLARY DAMAGE AWARDS

In his ninth and tenth issues, Salas complains about the trial court's damages award. In particular, he alleges that: (1) there is insufficient evidence to support the actual damages award; and (2) the trial court erred in awarding exemplary damages because Christensen failed to present "clear and convincing" evidence that he committed fraud.

### A. Actual Damages Award

Prior to the October 4, 2010 hearing, the trial court, after imposing several lesser sanctions, struck Salas's answer for various discovery abuses and for ignoring several court orders. As a result, Salas was deemed to have admitted to all of the allegations contained in Christensen's amended petition; thus, the focus of the October 4, 2010 hearing was on damages rather than liability. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) ("In cases of no-answer default . . . a defaulting defendant admits all facts properly pled in the plaintiff's petition except for the amount of unliquidated damages."). At the October 4, 2010 hearing, Chris Christensen testified that, based on his wife's calculations, the company sustained $172,465.42 in lost profits as a result of Salas's violations of the Agreement. No evidence contradicting this figure is found in the record. Salas argues that Christensen

was required to tender documents supporting testimony about lost profits and that Chris Christensen's wife should have testified. However, a damages award, especially within the context of a default judgment, may be supported solely upon testimony. *See Sherman Acquisition II L.P. v. Garcia*, 229 S.W.3d 802, 810 (Tex. App.—Waco 2007, no pet.) (citing TEX. R. CIV. P. 243; *Tex. Commerce Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Bargainier v. Saddlebrook Apartments*, 104 S.W.3d 171, 173 (Tex. App.—Waco 2003, no pet.); *Irlbeck v. John Deere Co.*, 714 S.W.2d 54, 57 (Tex. App.—Amarillo 1986, no writ)). Moreover, unobjected-to hearsay testimony constitutes probative evidence and is satisfactory evidence of damages. *See New*, 3 S.W.3d at 517. Therefore, based on the foregoing, we conclude that Chris Christensen's testimony regarding damages is sufficient to support the trial court's actual damages award. *See City of Keller*, 168 S.W.3d at 827 (setting forth the standard of review for legal sufficiency); *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (stating the standard of review for factual sufficiency).

## B. Exemplary Damages Award

With regard to the exemplary damages award, we first note that Salas does not challenge the amount; instead, he asserts that there is insufficient evidence to support the trial court's conclusion that he committed fraud, a cause of action for which exemplary damages may be awarded. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1) (West Supp. 2010).

The elements of a cause of action for fraud are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the

representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001).

Entitlement to exemplary damages must be established by clear and convincing evidence; thus, an elevated standard of review. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a). Clear and convincing evidence is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2) (West 2008); *see Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed." *W.L. Lindemann Operating Co. v. Strange*, 256 S.W.3d 766, 775 (Tex. App.—Fort Worth 2008, pet. denied) (citing *Addington*, 588 S.W.2d at 570).

The following allegations were properly pled in Christensen's amended petition and, by the striking of Salas's answers, were deemed to have been conclusively proven.

Immediately after he resigned from Christensen, Salas began working for one of Christensen's main competitors, Pure Paws, which was a direct violation of the Agreement that Salas agreed to and signed. Salas contacted several of Christensen's distributors and induced them to discontinue selling for Christensen and, instead, to sell for Pure Paws. Christensen also alleged that, when Salas was employed for the company, he had access to confidential information and trade secrets. However, once he left Christensen, Salas divulged Christensen's confidential information and trade secrets regarding customers and distributors with whom Christensen worked. Christensen asserted that this information gave Pure Paws a competitive advantage and resulted in economic damage to Christensen. In its amended petition, Christensen contended that Salas's actions supported a finding that Salas never intended to comply with the provisions of the Agreement, though he signed the Agreement as a condition of his employment with Christensen. Christensen further pleaded that, in hiring Salas, it relied upon Salas's representations that he would abide by the Agreement he signed and that, as a result of Salas's actions, the company sustained $172,465.42 in actual damages. With regard to exemplary damages, Christensen pleaded that Salas's actions after resigning from Christensen:

> constituted fraud and were committed with a specific intent to cause substantial harm to Plaintiff. Moreover, such acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff; and Defendant had a subjective awareness of the risk involved in his wrongful acts and omissions, but nevertheless proceeded with conscious indifference to the rights and welfare of Plaintiff.

Finally, Christensen requested the maximum amount of exemplary damages allowed under the statutory cap—two times the amount of actual damages or, in other words, $344,930.84. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008 (West Supp. 2010). The trial court ultimately awarded Christensen $175,000 in exemplary damages based on its fraud finding.

Based on our review of the record, we hold that there is sufficient evidence for a reasonable fact-finder to form a firm belief or conviction that Salas committed fraud upon Christensen. *See Ernst & Young, L.L.P.*, 51 S.W.3d at 577; *Bradford*, 48 S.W.3d at 754-55; *see also In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002*)*; *Moriel*, 879 S.W.2d at 31. And given that the record contains sufficient evidence to support the trial court's fraud finding, we conclude that Christensen proved by clear and convincing evidence that it was entitled to an exemplary damages award. *See Garza*, 164 S.W.3d at 627; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a). We overrule Salas's ninth and tenth issues.[8]

## XI. SUFFICIENCY OF THE EVIDENCE SUPPORTING THE TRIAL COURT'S FINAL FINDING OF CONTEMPT AND ISSUANCE OF A WRIT OF CAPIAS AND WARRANT FOR SALAS'S ARREST

In his twelfth issue, Salas challenges the trial court's third finding of contempt, which ordered a capias to issue for the arrest of Salas.[9] A court of appeals lacks jurisdiction to consider on direct appeal a trial court's contempt order because such an

---

[8] In his ninth and tenth issues, Salas also appears to challenge the propriety of the permanent injunction; however, these arguments are substantially similar to the arguments made in issue eleven. Therefore, we need not address these contentions here. *See* TEX. R. APP. P. 47.1.

[9] Also in his twelfth issue, Salas asserts that he did not receive proper notice of the February 1 2011 hearing on Christensen's contempt motion. However, we note that this contention is substantially similar to arguments made in issues two and three—issues which we overruled; thus, we need not address these arguments within the context of issue twelve. *See id.*

order is not a final, appealable judgment. *See Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985); *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 915-16 (Tex. App.—Fort Worth 2007, orig. proceeding); *Chambers v. Rosenberg*, 916 S.W.2d 633, 634 (Tex. App.—Austin 1996, writ denied); *Pruett v. Pruett*, 754 S.W.2d 802, 803 (Tex. App.—Tyler 1988, no writ). This rule applies even when the contempt order is "'appealed along with a judgment that is appealable.'" *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d at 915 (quoting *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied)); *see In re S.R.O.*, 143 S.W.3d 237, 248 (Tex. App.—Waco 2004, no pet.). Contempt proceedings are not appealable because they "are not concerned with disposing of all claims and parties before the court, as are judgments; instead, contempt proceedings involve a court's enforcement of its own orders, regardless of the status of the claims between the parties before it." *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d at 915-16 (citing *Cadle Co.*, 50 S.W.3d at 671). In other words,

> A contempt order . . . protects the status of the court itself; the power to punish for contempt is an essential element of judicial independence and authority that enables courts to persuade parties to obey an order of the court so that the order will not be rendered ineffectual by recalcitrant litigants.

*Id.* (citing *Ex parte Pryor*, 800 S.W.2d 511, 512 (Tex. 1990)). "[T]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Id.* (internal quotations & citations omitted).

However, a contempt order may be attacked by a petition for writ of habeas corpus, if the contemnor is confined, or a petition for writ of mandamus, if no confinement is involved, neither of which have been filed in this case. *Id.* (citing *Cadle Co.*, 50 S.W.3d at 671). Because Salas challenges the trial court's third contempt order and because contempt orders are not final, appealable judgments, we lack jurisdiction to consider this issue. *See Norman*, 692 S.W.2d at 655; *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d at 915-16; *Chambers*, 916 S.W.2d at 634; *Pruett*, 754 S.W.2d at 803. Salas's twelfth issue is overruled.

## XII.  THE ENFORCEABILITY OF THE AGREEMENT

In his thirteenth and final issue on appeal, Salas alleges that the Agreement is unenforceable, and as such, the trial court erred in granting all relief. In particular, Salas contends that the Agreement is an unreasonable restraint of trade because the terms:  (1) restrict his ability to trade or contact current and prospective clients or customers; (2) impose a five-year time limit and are not limited by geographical area; and (3) exclude him from industry-wide employment.

### A.  Applicable Law

Generally, every contract in restraint of trade or commerce is unlawful. TEX. BUS. & COM. CODE ANN. § 15.05(a) (West 2011). A covenant not to compete, however, is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of

the employer.[10] *Marsh USA, Inc. v. Cook*, No. 09-0558, 2011 Tex. LEXIS 465, at *6 (Tex. June 24, 2011) (citing TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2011)); *see Cobb v. Caye Publ'g Group, Inc.*, 322 S.W.3d 780, 783 (Tex. App.—Fort Worth 2010, no pet.). A restraint is unreasonable if it is broader than necessary to protect the legitimate interests of the employer. *Cobb*, 322 S.W.3d at 783 (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990)). And whether a covenant imposes a reasonable restraint on trade is a question of law for the court. *Id.* (citing *Light v. Cent. Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994); *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991)).

## B. Contact with current and prospective clients and customers

Among Salas's arguments is that the Agreement unreasonably prohibits him from using professional contacts and relationships that he has developed and, thus, constitutes an unreasonable restraint of trade. As noted above, the Agreement specifically prohibited Salas from:

> directly or indirectly interfer[ing] with, or endeavor[ing] to entice away from the Company any clients or account with whom the Employee had direct contact with at any time during his or her employment at Company, or for or with any other person, firm, corporation, partnership, joint venture, association, or other entity whatsoever, which is or intends to be engaged in providing or manufacturing pet supplies and related products manufactured and distributed by Company.

Courts have upheld similar provisions prohibiting a former employee from soliciting the employer's customers or disclosing the employer's confidential information. *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 550 (Tex. App.—Dallas 1993, no pet.); *see also Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 Tex. App. LEXIS 1909, at **8-10

---

[10] Salas does not assert that the Agreement was not ancillary to another enforceable agreement.

(Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.); *Totino v. Alexander & Assocs.*, No. 01-97-01204-CV, 1998 Tex. App. LEXIS 5295, at **2-3 (Tex. App.—Houston [1st Dist.] Aug. 20, 1998, no pet.).  As we stated in *Lockhart*, "[t]hese types of prohibitions do not 'enjoin competition' because they do not prohibit the employee from 'organizing a competing firm' or 'developing her own clients and consultants.'"  2010 Tex. App. LEXIS 1909, at *9 (citing *Rugen*, 864 S.W.2d at 551).  Moreover, this restriction is limited to pet supply manufacturers and those who are in the same business as Christensen. We cannot say that the complained-of provision is an unreasonable restraint on trade.

## C.  The Time Restraint & Geographic Restriction

Next, Salas complains that the Agreement's five-year restraint is unreasonable and that the Agreement does not contain a reasonable geographic limit.  With regard to the time restraint, Texas courts have held that two to five years is a reasonable time restriction in a non-competition agreement.  *See Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Arevalo v. Velvet Door, Inc.*, 508 S.W.2d 184, 186 (Tex. Civ. App.—El Paso 1974, writ ref'd n.r.e.); *Elec. Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.); *Weber v. Hesse Envelope Co.*, 342 S.W.2d 652, 656 (Tex. Civ. App.—Dallas 1960, no writ)); *see also Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 464 (Tex. App.—Fort Worth 1987, writ denied) (upholding a five-year time restraint).  Given this, we cannot say that the Agreement's five-year restraint is per se unreasonable.

With regard to the geographic scope, it is undisputed that the Agreement does not contain a specific geographic limitation.  Ordinarily, a covenant not to compete with

a broad or no geographical scope is unenforceable. *See Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793-94 (Tex. App.—Houston [1st Dist.] 2001, no pet.). However, limiting the applicability of the covenant to particular client bases is an acceptable substitute for a geographic limitation in a non-compete agreement. *See Vogelsang*, 312 S.W.3d at 654-55. Here, the Agreement is limited to a particular client base—entities which are or intend to be "engaged in providing and manufacturing pet supplies and related products manufactured and distributed by Company [Christensen]"—which we find to be an acceptable substitute for a geographic limitation. *See id.*

Furthermore, it is worth mentioning that Salas obtained trade secrets and confidential information from Christensen while employed as a Vice-President. Among the trade secrets Salas had access to were customer lists that were not publicly available, which were used to induce customers (distributors) to discontinue doing business with Christensen in favor of Salas's new employer, Pure Paws. *See, e.g., Sautter v. Comp Solutions Network*, No. 14-98-00555-CV, 1998 Tex. App. LEXIS 7248, at *9 (Tex. App.—Houston [14th Dist.] Nov. 19, 1998, no pet.) (not designated for publication) (noting that Texas law recognizes customer lists as trade secrets) (citing *Am. Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W.2d 274, 276 (Tex. App.—Houston [1st Dist.] 1988, no writ)). "Even without an enforceable covenant, however, 'a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment.'" *Id.* at **14-15 (quoting *Rugen*, 864 S.W.2d at 551); *see Johnston v. Am. Speedreading Academy, Inc.*, 526 S.W.2d 163, 166 (Tex. Civ. App.—Dallas

1975, no writ). Therefore, even if the Agreement's geographic restriction is problematic, Salas is prohibited from using confidential information and trade secrets obtained while employed by Christensen.

## D. Scope of Activity

In his final complaint about the Agreement, Salas contends that the terms impose an unreasonable industry-wide employment exclusion. Salas specifically states that the Agreement "amounts to an industry-wide exclusion from employment in any field involving pets or pet products." This, however, is untrue. The Agreement applies to the "pet supply manufacturing and distribution industry" rather than the entire industry pertaining to pets or pet products. Rather, based on the terms of the Agreement, Salas would not be precluded from working as a dog handler and groomer, as he did prior to being employed by Christensen. We conclude that the terms of the Agreement do not amount to an industry-wide employment exclusion and are not unreasonably broad in scope of activity. *See, e.g., Stone v. Griffin Comm'cns & Security Sys.*, 53 S.W.3d 687, 694 (Tex. App.—Tyler 2001) (concluding that a covenant prohibiting former employees from selling or leasing automobile security systems did not impose industry-wide restrictions because the employee was still free to perform repairs or maintenance on those systems), *overruled on other grounds by Am. Fracmaster, Ltd. v. Richardson*, 71 S.W.3d 381, 387 n.2 (Tex. App.—Tyler 2001, pet. granted, judgm't vacated w.r.m.). Moreover, Salas does not cite any authority to support his contention that the Agreement amounts to an industry-wide employment exclusion involving pets or pet products that is per se unreasonable.

Because the Agreement is limited in time, scope of activity, and has a reasonable alternative to a geographical area, we conclude that the covenant not to compete is reasonable.  *See* TEX. BUS. & COM. CODE ANN. § 15.50(a); *see also Cook*, 2011 Tex. LEXIS 465, at *6; *Cobb*, 322 S.W.3d at 783.  Accordingly, we overrule Salas's thirteenth issue.

## XIII.  CONCLUSION

Having overruled all of Salas's issues on appeal, we affirm the judgment of the trial court as modified.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
        (Chief Justice Gray concurs without a separate opinion)
Affirmed as modified
Opinion delivered and filed September 14, 2011
[CV06]